# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 03-1280

TEILLA L. NOEL

VERSUS

HOME HEALTH CARE 2000, INC.

************

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 3
PARISH OF CALCASIEU, NO. 01-06726,
HONORABLE SAM LOWERY,
WORKERS' COMPENSATION JUDGE

************

## JIMMIE C. PETERS
## JUDGE

************

Court composed of Jimmie C. Peters, Michael G. Sullivan, and Glenn B. Gremillion, Judges.

**AFFIRMED IN PART; REVERSED IN PART.**

Robert T. Jacques, Jr.
Attorney at Law
1011 Lakeshore Dr., Suite 310
Lake Charles, LA 70601
(337) 433-4674
COUNSEL FOR PLAINTIFF/APPELLEE:
    Teilla Noel

H. Douglas Hunter
Guglielmo, Lopez, Tuttle,
Hunter & Jarrell, L.L.P.
306 East North Street
P. O. Drawer 1329
Opelousas, LA 70571-1329
(337) 948-8201
COUNSEL FOR DEFENDANT/APPELLANT:
    Home Health Care 2000, Inc.

PETERS, J.

In this workers' compensation case, Home Health Care 2000, Inc. (Home Health)[1] appeals a judgment in favor of its former employee, Teilla Noel, ordering reinstatement of Ms. Noel's indemnity and medical benefits, awarding reimbursement for mileage expenses, awarding $9,000.00 in attorney fees, and holding that Ms. Noel did not violate the provisions of La.R.S. 23:1208. For the following reasons, we affirm in part and reverse in part.

## DISCUSSION OF THE RECORD

Jonald J. Walker is the president of Home Health, and his wife, Lisa Walker, is the corporation's chief executive officer. Apparently, they are the sole shareholders in the corporation. In February of 1998, Mrs. Walker hired Ms. Noel as a clerical employee. Ms. Noel eventually attained the position of office staff coordinator.

On September 30, 1998, in the course and scope of her employment, Ms. Noel fell off of a ladder while attempting to move files. As a result of the accident, Ms. Noel sustained various injuries and saw a host of physicians and psychologists for evaluation and/or treatment. Ms. Noel's diagnoses included a concussion, post-concussion syndrome with brain injury, right knee injury requiring arthroscopic surgery, sacroiliac joint dysfunction, depression, and pain disorder. Following her work accident, Ms. Noel began receiving indemnity and medical benefits and mileage expense reimbursements for travel in connection with her medical evaluations and treatment. Ms. Noel did not return to any employment after her work accident.

At some point, Home Health began to question the accuracy of Ms. Noel's mileage submissions, and, in August of 2001, or almost three years after her work accident, Home Health discontinued reimbursement of the mileage expenses.

---

[1] We note that Home Health was insured through the Louisiana United Businesses Self Insurers Fund, but for purposes of this appeal all references will be made to Home Health directly.

Additionally, in August of 2001, Ms. Noel underwent a functional capacity evaluation (FCE). Ms. Noel's effort in the FCE was labeled as "questionable" and "unreliable" to a degree. While the evaluator was of the opinion that Ms. Noel could not accurately be placed in an appropriate work category "[d]ue to [her] excessive number of inconsistent test results," the evaluator assumed through clinical observation and test results that Ms. Noel qualified for light-duty work. Home Health offered Ms. Noel her former job with accommodations and at the same rate of pay. Ms. Noel refused the job offer. Based mainly on its determination that Ms. Noel misrepresented her mileage and partially on the invalid FCE and the job tender, Home Health discontinued indemnity and medical benefits in September of 2001.

However, apparently just prior to Home Health's discontinuance of benefits, Ms. Noel ended a sexual affair she had been having with Mr. Walker. In fact, according to Ms. Noel, Mr. Walker had indicated to her that the benefits would be stopped because she refused to accompany him on a trip to Dallas, Texas. Mr. Walker denied that he had any control over Ms. Noel's receipt of benefits and stated that he did not tell her he had such control.

Regardless of any actual connection between the discontinuance of benefits and the ending of the affair, the affair and its aftermath resulted in complications not encountered in the typical workers' compensation case. Specifically, the sexual aspects of the affair began after the work accident, but Mr. Walker and Ms. Noel had engaged in "[c]ommunication" before the work accident. It appears that in the Fall of 2001, Ms. Noel filed a sexual harassment lawsuit against Mr. Walker. Additionally, in December of 2001, she filed a criminal complaint, asserting that Mr. Walker was making harassing telephone calls to her. According to Ms. Noel, after the affair ended, Mr. Walker called her repeatedly, appeared at her house, and followed

her. However, Ms. Noel testified that the harassment was not limited to Mr. Walker as Mrs. Walker followed her as well. She presented as evidence of the Walkers' activities her journal entries in which she recorded various episodes of the harassment, the Calcasieu Parish Sheriff's Department complaint and investigation records, and BellSouth telephone records. Mr. Walker, on the advice of separate counsel who was present during the workers' compensation proceedings, refused to answer questions concerning the alleged affair and harassment.

In part due to these complications and in part due to her continuing physical problems, Ms. Noel did not feel that she could accept the job offer by Home Health following the FCE. Additionally, while Ms. Noel admitted that the mileage she submitted was not in compliance with the shortest routes available to her, her reasons for taking the longer routes included attempts to avoid being followed by Mr. Walker and the need to pick someone up to go with her to certain appointments because she was afraid to be alone and because of the nature of the procedures she was to undergo.

Following the termination of benefits, Ms. Noel filed the instant claim for reinstatement of benefits, penalties, and attorney fees. Home Health countered with the assertion that Ms. Noel violated La.R.S. 23:1208 by overstating her mileage in her reimbursement requests and by misrepresenting her physical capabilities in the FCE.

After a trial on the merits, the workers' compensation judge (WCJ) held that Ms. Noel did not commit fraud for purposes of La.R.S. 23:1208 forfeiture, ordered reinstatement of indemnity and medical benefits from the date of termination of those benefits, awarded a penalty in the amount of $2,000.00, awarded attorney fees in the amount of $9,000.00, and ordered that unpaid mileage expenses be resubmitted. Home Health then filed a motion for new trial, which the WCJ granted in part to the extent of deleting the penalty award and setting the mileage for various healthcare

3

providers as well as a pharmacy. Otherwise, the WCJ left its original judgment intact.

Home Health has appealed, asserting the following assignments of error:

1. The trial court erred in awarding Teilla Noel disability benefits subsequent to September 21, 2001.
2. The trial court erred in finding Teilla Noel did not violate LSA R.S. 23:1208, forfeiting any future right to worker's compensation benefits.
3. The trial court erred in awarding attorney's fees.

Additionally, Ms. Noel has answered the appeal, seeking additional attorney fees for work done on appeal.

## OPINION

### *Indemnity Benefits*

Initially, Home Health contends that the WCJ erred in awarding Ms. Noel indemnity benefits after September 21, 2001. Specifically, Home Health's vocational rehabilitation consultant determined that Ms. Noel's former job was available to her and that she could physically perform the job. Home Health thus offered Ms. Noel her former job, with accommodations, at her same rate of pay and presented evidence that it had jobs available at the same rate of pay at other Home Health office locations where Mr. Walker would not be present. Nevertheless, Ms. Noel did not return to work with Home Health, citing personal and physical reasons. The WCJ rejected these positions as being insufficient to terminate indemnity benefits, and Home Health challenges this rejection.

Louisiana Revised Statutes 23:1226(B)(1) provides that the goal of rehabilitation services is to return the disabled employee to work as soon as possible after an injury occurs, with a minimum of retraining. The first appropriate option is a return to the same position. *Id.* Additionally, in order for an employer to establish the employee's earning capacity, the employer must prove, by a preponderance of the

4

evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee or available to the employee in the employee's or employer's community or reasonable geographic region. La.R.S. 23:1221(3)(c)(i); *Banks v. Indus. Roofing & Sheet Metal Works, Inc.*, 96-2840 (La. 7/1/97), 696 So.2d 551. An employer may discharge its burden of proving job availability by establishing: (1) the existence of a suitable job within the employee's physical capabilities and within the employee's or employer's community or reasonable geographic region, (2) the amount of wages that the employee can be expected to earn in that job, and (3) an actual position available for that particular job at the time that the employee received notification of the job's existence. *Banks*, 696 So.2d 551. A "suitable job" has been described as "a job that claimant is not only physically capable of performing, but one that also falls within the limits of claimant's age, experience, and education." *Id.* at 557.

In this assignment of error, we address only whether the Home Health jobs offered or open were truly "available" under the facts and circumstances of this case, not whether Ms. Noel was physically capable of performing the jobs.

Home Health asserts the following in its brief:

> The main objection to the tender of employment was due to the employee's illicit relationship with the owner of Home Health 2000, Jonald Walker. This was a sexual relationship which started after Ms. Noel began receiving worker's compensation benefits. It included secret rendezvous in apartments and motels, both locally and afar. This relationship continued for over two years. Neither Jonald Walker nor Teilla Noel is blameless in this relationship. Jonald Walker was married. His wife worked at Home Health. Teilla Noel knew Jonald Walker was married. In fact, she knew his wife. Nonetheless, she knowingly entered into this relationship.
> It is unfathomable that an employee can benefit from their own indiscretions. In the instant case Ms. Noel entered into a dangerous relationship, that with a married man. The examples of such relationships ending in good standing are few and far between. Ms. Noel got what she deserved, a distasteful ending. In the name of justice she

5

cannot benefit by her actions.

Furthermore, it is inconceivable that the Walkers would continue harassment of Ms. Noel given the fact that there are criminal charges pending against Mr. Walker. There are no less than fourteen separate offices in which Ms. Noel could work. Jonald and Lisa Walker work out of one of those offices. Allegations of continued harassment are simply baseless. Had Ms. Noel wanted to establish such harassment she should have returned to work. Only in that fashion could anybody state, with any certainty, whether she would have been penalized by the Walkers as a result of her adulterous relationship with Jonald.

This is a case of first impression for us and, as set forth above, is complicated by circumstances not usually present in a workers' compensation case. Ms. Noel's former job involved working in the same office location as Mr. Walker, with whom she had been involved sexually. Were the affair the only complication in Ms. Noel's return to work, we might be inclined to agree that Ms. Noel should not be allowed to "benefit from [her] own indiscretions" to the extent of considering her former job as not being "available" because of this complication.

However, the evidence reveals more than the mere termination of the affair. After Ms. Noel ended the affair, Mr. Walker stalked and harassed her. Additionally, Mrs. Walker followed or stalked Ms. Noel during these events. The Walkers are both the officers and owners of the employing corporation. Under these circumstances in which the former employers committed acts against their former employee that resulted in or necessitated the filing of a civil suit and criminal charges, we cannot say that the WCJ erred in finding that Ms. Noel's former job was not truly "available" to her as a suitable or appropriate job. We hold that such factors should be considered in determining the "suitability" of and thus the "availability" of a job. Certainly the job was theoretically "available" to her or available "on paper" according to the trial testimony, but it was not suitable for her and thus not practically "available" due to the actions of the Walkers. We find specious Home Health's argument to the effect

that "it is inconceivable that the Walkers would continue harassment of Ms. Noel given the fact that there are criminal charges pending against Mr. Walker." Rather, in keeping with the beneficent and humanitarian goals of the Workers' Compensation Act, we find that Ms. Noel should not be required to either suffer the loss of her workers' compensation benefits or return to a work environment where those in authority over her have already engaged in a course of hostile and perhaps criminal conduct against her and against whom she has ongoing litigation as a result. Further, were she to return to work, Ms. Noel would be put in a position of depending on the continued availability of that job from the Walkers themselves, where, according to Ms. Noel, Mr. Walker had previously threatened her with the loss of her workers' compensation benefits for failing to comply with his demands. Human nature militates against the fitness or feasibility of such a work situation. Simply put, the offer of her former job under these circumstances is sham rehabilitation. We do not comment in any way on Ms. Noel's physical ability to perform the job; rather, our holding is that the job is not available to Ms. Noel, regardless of her abilities, because of the actions of her former employers.

Nevertheless, Home Health presented evidence as to the availability of positions in its other office locations in the area, where Mr. Walker would not be present. Still, Mrs. Walker admitted that she and her husband supervise the other offices and that she travels to those offices about once a month. Moreover, regardless of the physical presence or absence of the Walkers at other Home Health job locations, the Walkers are still the owners of Home Health. For the reasons given above, these jobs are also not practically available to Ms. Noel.

### Forfeiture of Benefits

Home Health contends that the WCJ erred in finding that Ms. Noel did not

violate La.R.S. 23:1208 and thus forfeit her right to workers' compensation benefits when she misrepresented her mileage and when she misrepresented her physical capabilities at the FCE.

Louisiana Revised Statutes 23:1208(A) provides: "It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter . . . to willfully make a false statement or representation." Further, La.R.S. 23:1208(E) provides: "Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter." "The only requirements for forfeiture of benefits under Section 1208 are that (1) there is a false statement or representation, (2) it is willfully made, and (3) it is made for the purpose of obtaining or defeating any benefit or payment." *Resweber v. Haroil Constr. Co.*, 94-2708, p. 7 (La. 9/5/95), 660 So.2d 7, 12.

Concerning mileage reimbursement, La.R.S. 23:1203(D) provides in pertinent part that "the employer shall be liable for the actual expenses reasonably and necessarily incurred by the employee for mileage *reasonably and necessarily* traveled by the employee in order to obtain the medical services, medicines, and prosthetic devices, which the employer is required to furnish under this Section . . . ." (Emphasis added.) Home Health asserts that Ms. Noel continuously, wilfully, and for the purposes of obtaining benefits overstated her mileage for a period of almost three years, which led to her receiving around $1,000.00 in benefits to which was not legally entitled. Home Health hired a private investigator to check the mileage for the most direct routes for certain locations, and the private investigator's mileage was significantly different than that reported by Ms. Noel. Additionally, Home Health's third-party administrator checked Ms. Noel's reported mileage against mileage

available over the internet through MapQuest, and again the mileage differed significantly. Home Health cites *Johnson v. Basic Industries, Inc.*, 97-1136 (La.App. 3 Cir. 4/15/98), 711 So.2d 843, *writ denied*, 98-1358 (La. 6/26/98), 719 So.2d 1292, and *St. Benard Parish Police Jury v. Duplessis*, 02-632 (La. 12/4/02), 831 So.2d 955, in support of its argument.

At trial, Ms. Noel admitted that she did not take the shortest routes available to her, but she denied doing anything willful to change the mileage that she submitted. Because her vehicle did not have a "trip meter," she recorded the mileage when she left home and subtracted that from the mileage registered when she returned home. As we appreciate her testimony, Ms. Noel included in her mileage the distance to pick up her friend or her daughter to attend various appointments with her because: "I was scared to be by myself during the day and also, a lot of times, I got injections; and Dr. Lopez suggested that I bring somebody with me to drive home." As set forth above, it appears that Mr. Walker followed or stalked Ms. Noel, and she testified that she chose a certain route because Mr. Walker was not aware of that route. Additionally, it appears that Ms. Noel included in her mileage the distance traveled to her mother's house where she dropped her children off during certain doctor appointments. Ms. Noel hired her own private investigator, who checked the mileage for Ms. Noel's trips within Calcasieu Parish in accordance with the routes given by Ms. Noel. According to Ms. Noel's private investigator, the mileage Ms. Noel submitted was actually less, except in one instance, than what he found.

Ms. Noel testified that no one ever informed her that she had to use the shortest routes. Indeed, La.R.S. 23:1203(D) requires only that the mileage be reasonable and necessary. The WCJ adjusted the mileage owed by Home Health to an amount less than that claimed by Ms. Noel, but he did not find that Ms. Noel had wilfully made

9

false representations for the purpose of obtaining benefits in regard to her mileage submissions.  The WCJ gave the following reasons:

> I've sat less than two feet from each person testifying, listened to everything they said, gauged their demeanor, weighed what they said in context of what everyone else said, and made a decision based on credibility, because this case, while it involves a unique combination of litigation and libido, basically comes down to who is the most believable.  I don't think anybody who has listened to and sat where I've sat and looked at the witnesses as carefully as I looked at them could possibly reach any other conclusion than I have reached.  They could have reached it quicker, perhaps, but it wouldn't be any different.  The over-arching and under-penning question here is: Did Mrs. Noel commit fraud, and what would be the consequences of her either doing it or not doing it?  Did she deceive her employer?
>
> Well, we have a lot of geographical material.  We know where all the streets are and ponds and lakes and bridges and all.  We know all that, but that really – and we know the shortest distance from point "A" to point "B", but I could have figured that out from home.  I know Moss Bluff and all the doctors' offices, and I can tell you the quickest way to get there, but that really doesn't go to the heart of the problem.  She admits she didn't take the shortest distance, and she says the reason she didn't take the shortest distance  – well, there are two.  First, she needed to take medication at the doctor's office on occasion, and she needed somebody to go with her to drive her back, and the people that she happens to know just didn't live on the direct A-to-B, geometrically straight route.  Reasonable.
>
> Secondly, she says she's having problems, or was having problems, and still is, with her employer.  Well, there's a lot of dispute about that.  When did it start, when did it end, what happened, and all of that, and Mr. Walker took the stand briefly.  Well, he didn't stay on the stand briefly, but he answered very briefly, and I want the record to reflect that every word out of his mouth was heard by his counsel who is representing him in another related matter, and I took great pains to make sure that his counsel had direct eye contact with Mr. Walker, and he apparently used it.  He refused to answer each and every question that is important as to the issue of whether or not Ms. Noel found it necessary to use a different approach.  Now, his refusing to answer is certainly his prerogative, and I respect that, and I draw no inference from the fact that he said nothing, nothing; however, I did, can, and am drawing inferences from the testimony of the CEO, his wife, whose attorney in this matter was also in court, with direct eye contact with her.  The question was: Did you know that Ms. Noel and her husband was [sic] having an affair?  And the answer was, "I don't know anything about that."  So I sit here in slack-jawed disbelief, as Mrs. Walker says, who has been served, presumably with papers by a U.S. Marshal, I guess that's who served them in federal court, citing the affair, and the relationship, and the alleged harassment, but he [sic] just doesn't know anything about this,

10

and that was the high point of her testimony. The rest of it was – not clear and confusing. Asked did he think Ms. Noel was an honest person. He said no. Would you hire her back? Absolutely.

Now, Mrs. Walker remembers nothing. Her – her most frequent response was: I just don't recall. Mr. Walker just is not going to testify. We then have to move to Ms. Noel, who presented pounds of documents, clear, detailed information that outlined her allegation. Police reports, police complaints, district attorney reports, page after page, and they're all in evidence, page after page of telephone calls made by, presumably, Mr. Walker to her. Mr. Walker can't comment. Mrs. Walker says she doesn't know anything about it, so we pretty much are left with what Ms. Noel says.

The WCJ concluded that Mrs. Noel did not commit fraud: "What she did had a lot of labels to it, but it does not rise to the level of fraud."

Credibility calls are for the WCJ. *Bruno v. Harbert Int'l, Inc.*, 593 So.2d 357 (La.1992). The record supports that while Ms. Noel recorded mileage that was arguably not reasonable and necessary for purposes of La.R.S. 23:1203(D), which issue we do not here decide, she did not do so wilfully for the purpose of obtaining benefits. We do not find that the WCJ's credibility calls and other factual determinations in this regard were clearly wrong. Further, the cases cited by Home Health are inapposite. In *Johnson*, 711 So.2d 843, this court found that the employee was not credible, and the specific and complicating facts that are present in the instant case were not present in *Johnson*. Also, in *St. Bernard*, 831 So.2d 955, the supreme court expressly stated that the issue of whether the employee wilfully gave false statements or representations regarding mileage for the purposes of obtaining benefits was not before it; rather, the court addressed the issue of whether an injured employee who has made wilful misrepresentations regarding mileage reimbursement forfeits his right to *all* workers' compensation benefits.

Concerning the FCE, the record reveals that the evaluator concluded that Ms. Noel had an "excessive number of inconsistent test results" and that her effort was

"unreliable" to a degree. Assuming, without deciding, that an FCE qualifies for purposes of La.R.S. 23:1208(A) as a "statement" or "representation," a false statement or representation in that regard must be wilfully made for the purpose of obtaining benefits. Ms. Noel testified that she performed the tests to the best of her ability, that she informed the evaluator that she was on medication at the time, that she was told what to do but not given any demonstrations, and that she complained that some of the tests hurt her. Physical Therapist Kevin Sellers, who did not perform the FCE but who testified about the results of the FCE, stated that, based on the test results, "it would appear that the effort she gave was not a reliable effort and that it would suggest she withheld some of her efforts." However, Mr. Sellers admitted that it was difficult for him to state whether there was a conscious effort on Ms. Noel's part to not perform to her full capabilities. He explained: "These things vary. The person's subjective pain levels are involved. There's an emotional component that's involved . . . ."

The record supports that Ms. Noel did not give a reliable effort. However, that fact alone does not result in the ultimate conclusion that she *wilfully* gave a *false* representation for the purpose of obtaining benefits. Ms. Noel gave reasonable explanations about factors that may have affected the FCE, and the WCJ accepted Ms. Noel as a credible witness. Further, even Mr. Sellers explained that pain levels and an emotional component are involved in an FCE. Thus, we find no manifest error in the WCJ's determination that Ms. Noel did not violate the provisions of La.R.S. 23:1208 concerning the FCE.

### *Attorney Fees*

Finally, Home Health contends that the WCJ erred in awarding attorney fees when it had a reasonable basis to deny benefits. Ms. Noel seeks additional attorney

12

fees for work done on appeal.

At all pertinent times, La.R.S. 23:1201.2[2] provided: "Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of all reasonable attorney fees for the prosecution and collection of such claims." The WCJ stated:

> Now, did the employer act arbitrarily and capriciously? Well, not exactly, because to act arbitrarily encompasses the notion that there had to be some cognitive effort on somebody's part to do something mean-spirited, and here, there was not a lot of cognition. More properly put, I would say this has [sic] vindictive, punitive, mean-spirited, and in a large measure, just plain dumb, but there's no legislation for that, so we're going to have to ratchet this up the moral scale to get it to the level of arbitrary and capricious, but that certainly is where it belongs, although that's almost a charitable description.

"Arbitrary and capricious behavior consists of willful and unreasoning action, without consideration and regard for facts and circumstances presented, or of seemingly unfounded motivation." *Brown v. Texas-LA Cartage, Inc.*, 98-1063, pp. 8-9 (La. 12/1/98), 721 So.2d 885, 890. It appears on one hand that the WCJ found that Home Health's discontinuance of benefits did not rise to the level of willful and unreasoning action, but on the other hand he found that it was vindictive, punitive, and mean-spirited. Regardless of whether the WCJ in effect applied the wrong legal standard or applied the standard incorrectly, the record evidence does not support that Home Health was arbitrary, capricious, or without probable cause in its termination of benefits.

As set forth above, Home Health discontinued benefits based mainly on its determination that Ms. Noel misrepresented her mileage and partially on the invalid

---

[2]We note that 2003 La. Acts No. 1204, § 2, repealed La.R.S. 23:1201.2, and its substance appears now in La.R.S. 23:1201(I).

FCE and the job tender. Indeed, Ms. Noel admitted that she did not calculate her mileage using the most direct routes available to her, and the WCJ adjusted her mileage down from that submitted by her. Further, the issue of whether Ms. Noel's job was "available" to her because of the complicating circumstances of this case was an issue of first impression for us, not firmly established by statute or jurisprudence, and Ms. Noel's effort on the FCE was reported as "unreliable." Importantly, "an employer should not be penalized for bringing a close legal issue to court." *Burruss v. Centro Mgmt., Inc.*, 00-1274, p. 2 (La.App. 3 Cir. 2/28/01), 780 So.2d 630, 631. Moreover, much of this case turned on credibility calls, which could have gone in Home Health's favor. Therefore, we find that the WCJ was at least manifestly erroneous in awarding attorney fees, and we reverse that award. We likewise reject Ms. Noel's claim for attorney fees for work done on appeal.

## DISPOSITION

For the foregoing reasons, we reverse the award of attorney fees and affirm the judgment below in all other respects. We assess one-half of the costs of this appeal to Teilla Noel and one-half of the costs to Home Health Care 2000, Inc.

**AFFIRMED IN PART; REVERSED IN PART.**

14