STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

14-599


LUCY JOHNSON

VERSUS

ST. FRANCES NURSING & REHABILITATION CENTER


**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 3
PARISH OF CALCASIEU, NO. 09-03832
SAM L. LOWERY, WORKERS' COMPENSATION JUDGE

**********

PHYLLIS M. KEATY
JUDGE

**********

Court composed of Shannon J. Gremillion, Phyllis M. Keaty, and John E. Conery, Judges.


AFFIRMED IN PART AND REVERSED IN PART.

H. Douglas Hunter
Misti Landry Bryant
Guglielmo, Lopez, Tuttle, Hunter & Jarrell, L.L.P.
Post Office Drawer 1329
Opelousas, Louisiana 70571-1329
(337) 948-8201
Counsel for Defendant/Appellant:
    St. Frances Nursing & Rehabilitation Center

**Michael B. Holmes**
**Hebert, Holmes & Bertrand**
**Post Office Box 790**
**Kinder, Louisiana 70648-0790**
**(337) 738-2568**
**Counsel for Plaintiff/Appellee:**
**Lucy Johnson**

**KEATY, Judge.**

In this workers' compensation case, St. Frances Nursing & Rehabilitation Center appeals a judgment in favor of its former employee, Lucy Johnson, ordering Supplemental Earnings Benefits (SEBs), statutory penalties, and attorney fees, and holding that Johnson did not violate the provisions of La.R.S. 23:1208(A). For the following reasons, we affirm in part and reverse in part.

## FACTS AND PROCEDURAL HISTORY

On July 5, 2006, in the course and scope of her employment as a nurse employed by St. Frances, Johnson was injured by a patient who hit her in the back of her head and neck. As a result of her injuries, Johnson sought treatment from Dr. Clark Gunderson, an orthopedic surgeon, who performed a three-level cervical disc fusion. He subsequently released her to return to work with restrictions in November 2007. Following her initial release, Johnson maintained a part-time schedule working light duty at St. Frances from November 2007 through February 2008. Johnson testified that she experienced pain while working part time although it was controlled by pain medication prescribed by Dr. Gunderson.

In February 2008, after Dr. Gunderson released her to work full duty, Johnson began working with restrictions on a full-time schedule until June 2008. Johnson testified that during her transition from part-time, light-duty work to full-time, full-duty work, her pain increased and "became very excruciating." She returned to Dr. Gunderson and advised that her increased pain was uncontrolled by medication. As a result, Dr. Gunderson reduced her release to light duty in May 2008. Based upon Johnson's continued subjective complaints of pain, Dr. Gunderson changed his opinion to no-work status from June 5, 2008, through November 2008. Dr. Gunderson subsequently released her to return to light-duty

work with restrictions in November 2008, in her position with St. Frances. Johnson returned to work that same month and worked only two days as she was unable to perform the duties within the restrictions. Dr. Gunderson again placed her on a no-work status. During a regularly-scheduled appointment with Dr. Gunderson approximately eight months later on July 27, 2009, Dr. Gunderson maintained Johnson's no-work status. Dr. Gunderson also opined that Johnson was not a surgical candidate and referred her to Dr. Stephen Katz, a pain management physician.

On July 28, 2009, Johnson presented to Dr. Katz. Dr. Gunderson testified that he was aware that Dr. Katz had taken over Johnson's care as of July 28, 2009. Dr. Gunderson testified that he deferred to Dr. Katz regarding Johnson's restrictions and/or ability to return to work as of the date of his referral. Johnson testified that during her initial visit with Dr. Katz, she was never asked to demonstrate any physical abilities related to work duties nor did he discuss with her any ability to return to work. Johnson testified that she was not asked to walk across the room, bend, stoop, reach up, or reach down. According to excerpts from the employer's adjuster's file, dated August 14, 2009, Dr. Katz advised that he would offer "only to monitor medications [with] no discussion of return to work abilities."

Buster Fontenot, a vocational rehabilitation consultant assigned to Johnson in 2008, developed a modified licensed practical nurse (LPN) job analysis in order to enable Johnson to return to work. Fontenot met with Dr. Katz on September 11, 2009, wherein Dr. Katz agreed that Johnson could return to work in a modified LPN position. Despite the foregoing, Johnson testified that Dr. Katz never told her that he believed that she was able to return to work. Approximately two months

later on November 9, 2009, Dr. Katz withdrew his opinion rendered on September 11, 2009, when Johnson advised him that Dr. Gunderson placed her on a non-return to work status. Dr. Katz's medical record on that date states that in order to avoid confusion, he would defer to Dr. Gunderson for determination of Johnson's return to work status.

Johnson returned to Dr. Gunderson on April 20, 2010, with complaints of pain and trouble swallowing. Dr. Gunderson removed her fusion hardware on May 9, 2011, in order to alleviate the pain she experienced when swallowing. Johnson subsequently underwent a functional capacity examination (FCE) on May 1, 2013, which was rendered by physical therapist David Regan. Johnson testified that she was aware that Regan believed that she intentionally misrepresented her physical capabilities during her examination. According to the FCE, Regan opined that "the INVALID results identified in this assessment and Functional Assessment Overview represent the levels Ms. Johnson chose to demonstrate as her physical capabilities. The numbers do not represent her true safe capabilities as Ms. Johnson intentionally manipulated the results of the assessment." According to Regan's deposition testimony, he did not attempt to determine whether the alleged misrepresentations during Johnson's FCE were willfully made. Regan testified that he deferred that issue to Dr. Gunderson for investigation.

Johnson received medical and indemnity benefits from the onset of her disability through the beginning of September 2009. St. Frances terminated indemnity benefits from September 11, 2009, through May 7, 2011. Indemnity benefits were reinstated and paid from May 9, 2011, through the date of trial which

began on October 23, 2013. Johnson's indemnity benefits were based upon an average weekly wage (AWW) of $413.13.

Following termination of benefits on September 11, 2009, Johnson filed the instant claim for reinstatement of benefits, penalties, attorney fees, and a psychological evaluation and/or care by a mental health professional. St. Frances countered with the assertion that Johnson committed fraud, thereby forfeiting her right to benefits pursuant to La.R.S. 23:1208(A), by misrepresenting her condition to her treating physicians and by misrepresenting her physical capabilities during the FCE.

After a trial on the merits, the workers' compensation judge (WCJ) held that Johnson did not commit fraud for purposes of La.R.S. 23:1208(A) forfeiture and awarded her $35,723.53 in SEBs from September 11, 2009, through May 9, 2011, utilizing an AWW of $413.33 per week. The WCJ awarded Johnson $4,000.00 in statutory penalties, ordered St. Frances to authorize a mental health evaluation, and awarded attorney fees.

St. Frances has appealed, asserting the following assignments of error:

1. The Workers' Compensation Judge erred in failing to find that Ms. Johnson violated [La.R.S. 23:1208(A)] when she intentionally misrepresented her physical capabilities at her functional capacity examination.

2. The Workers' Compensation Judge erred in finding that claimant, Lucy Johnson, was entitled to Supplemental Earnings Benefits for the period of September 11, 2009 through May 9, 2011.

3. The Workers' Compensation Judge erred in finding that [Johnson] is entitled to an award of penalties and attorney fees.

4

## STANDARD OF REVIEW

In *Foster v. Rabalais Masonry, Inc.*, 01-1394, p. 2 (La.App. 3 Cir. 3/6/02), 811 So.2d 1160, 1162, *writ denied*, 02-1164 (La. 6/14/02), 818 So.2d 784 (citations omitted), this court noted the standard of review applicable in workers' compensation cases as follows: "Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. In applying the manifest error standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one." "The determination of coverage is a subjective one in that each case must be decided from all of its particular facts." *Jackson v. Am. Ins. Co.*, 404 So.2d 218, 220 (La.1981). Thus, "great deference is accorded to the [workers' compensation judge's] factual findings and reasonable evaluations of credibility." *Garner v. Sheats & Frazier*, 95-39, p. 7 (La.App. 3 Cir. 7/5/95), 663 So.2d 57, 61. "Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable." *Vidrine v. La-Tex Rubber & Specialties, Inc.*, 07-157, p. 4 (La.App. 3 Cir. 5/30/07), 958 So.2d 146, 149.

## DISCUSSION

### I.    Fraud

In its first assignment of error, St. Frances contends that the WCJ erred in failing to find that Johnson committed fraud, thereby forfeiting her right to benefits pursuant to La.R.S. 23:1208(A), when she intentionally misrepresented her physical capabilities during her FCE.

Louisiana Revised Statutes 23:1208(A) provides that "[i]t shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation." In order to prove that an employee forfeited his or her rights under this statute, an employer must show "that (1) there is a false statement or representation, (2) it is willfully made, and (3) it is made for the purpose of obtaining or defeating any benefit or payment." *Resweber v. Haroil Constr. Co.*, 94-2708, 94-3138, p. 7 (La. 9/5/95), 660 So.2d 7, 12. The supreme court in *Resweber*, 660 So.2d at 16, further explained:

> [T]he statute does not require the forfeiture of benefits for any false statement, but rather only false statements that are willfully made for the purpose of obtaining benefits. It is evident that the relationship between the false statement and the pending claim will be probative in determining whether the statement was made willfully for the purpose of obtaining benefits. . . . Clearly, an inadvertent and inconsequential false statement would not result in forfeiture of benefits.

In the instant case, both parties cite *Noel v. Home Health Care 2000, Inc.*, 03-1280 (La.App. 3 Cir. 3/3/04), 867 So.2d 945, *writs denied*, 04-854, 04-871 (La. 5/14/04), 872 So.2d 520, 522. In *Noel*, the employer appealed the trial court's judgment in favor of the former employee ordering reinstatement of the employee's indemnity and medical benefits, awarding $9,000.00 in attorney fees, and holding that the employee did not violate the provisions of La.R.S. 23:1208(A). With respect to the FCE, the record revealed that the evaluator concluded that the employee had multiple inconsistent test results and that the employee's effort was unreliable. This court stated: "Assuming, without deciding, that an FCE qualifies for purposes of La.R.S. 23:1208(A) as a 'statement' or 'representation,' a false statement or representation in that regard must be wilfully [sic] made for the purpose of obtaining benefits." *Noel*, 867 So.2d at 953.

6

In its analysis, this court in *Noel*, 867 So.2d at 953, stated that the employee "testified that she performed the tests to the best of her ability," and that she told the evaluator that she was currently on medication. The employee testified that although she was told what to do, she was not given any demonstrations. The employee's testimony revealed that she complained of pain while performing some of the tests. Although the physical therapist did not perform the FCE, he testified regarding the results and stated that given the employee's unreliable effort, she must have withheld some effort. The physical therapist admitted, however, that it was difficult for him to state whether the employee made a conscious effort to not perform to her full capabilities. The physical therapist explained that "'[t]hese things vary. The person's subjective pain levels are involved. There's an emotional component that's involved . . . .'" *Id*. at 953.

Although the record showed that the employee failed to give a reliable effort, this court in *Noel* stated: "However, that fact alone does not result in the ultimate conclusion that she *wilfully* [sic] gave a *false* representation for the purpose of obtaining benefits." *Id.* This court reasoned that the employee gave reasonable explanations about factors that could have possibly affected her performance during the FCE, and the WCJ accepted the employee as a credible witness. Accordingly, this court held that there was no manifest error in the WCJ's determination that the employee did not violate the provisions of La.R.S. 23:1208(A) during her FCE.

We find that the facts in *Noel* are similar to the facts in the present case. Specifically and with respect to the FCE in the instant case, the record reveals that Johnson underwent a FCE which was administered by Regan, a physical therapist. Regan opined that Johnson intentionally misrepresented her physical capabilities.

According to Regan's deposition testimony, however, he did not attempt to determine whether the alleged misrepresentations during Johnson's FCE were willfully made. Regan testified that he deferred that issue to Dr. Gunderson for investigation.

The record also contains the trial testimony of Monica Winn, Johnson's daughter. Winn testified that, in addition to accompanying Johnson to the FCE, she accompanied her to multiple doctor visits following her injury. Winn stated that Johnson was constantly experiencing pain, especially when she was working full duty following her cervical disc surgery. Winn also testified that she had no reason to believe that Johnson was not being truthful about the amount of pain she was experiencing.

At trial, Johnson testified that she did not intentionally mislead Regan about her pain level and physical capabilities. Johnson testified that she refused to perform some things during the FCE as it would cause her more pain. Johnson also testified that, the day following her FCE, she called Dr. Gunderson with complaints of excruciating pain. She advised Dr. Gunderson that she was going to call Dr. Katz to request pain medication as she could barely get out of bed. Johnson's testimony is confirmed by Dr. Gunderson's medical records.

Based on the above and similar to *Noel*, we find that the record reveals that Johnson failed to give a reliable effort during her FCE. "However, that fact alone does not result in the ultimate conclusion that she *wilfully* [sic] gave a *false* representation for the purpose of obtaining benefits." *Noel*, 867 So.2d at 953. We find that Johnson provided reasonable explanations about factors that could have affected the FCE, and the WCJ accepted her as a credible witness. Despite Regan's unfavorable testimony regarding Johnson's intentional misleading of her

physical capabilities during the FCE, Regan's deposition testimony indicates that he did not attempt to determine whether her alleged misrepresentations were willfully made as he deferred that issue to Dr. Gunderson for investigation. Thus, we find that there was no manifest error in the WCJ's determination that Johnson did not violate the provisions of La.R.S. 23:1208(A) concerning the FCE. This assignment of error is without merit.

## II.   Indemnity Benefits

St. Frances contends that the WCJ erred in awarding Johnson SEBs from September 11, 2009, through May 9, 2011. An award of SEBs is appropriate when there is an "injury resulting in the employee's inability to earn wages equal to ninety percent or more of wages at time of injury." La.R.S. 23:1221(3)(a)(i). St. Frances argues that termination of SEBs was proper based on Dr. Katz's opinion rendered on September 11, 2009, wherein he opined that Johnson could return to work in a modified capacity. St. Frances alleges that Dr. Katz further opined that Johnson had reached maximum medical improvement (MMI). Despite the availability of the modified position, St. Frances contends that Johnson failed to return to work. We find that St. Frances' reliance on Dr. Katz's opinion for terminating benefits is without merit for multiple reasons.

The evidence shows that Dr. Katz advised the employer's adjuster that he would offer "only to monitor medications [with] no discussion of return to work abilities." Despite the adjuster's knowledge of this limitation, he ordered Fontenot, the vocational rehabilitation consultant, to schedule a conference with Dr. Katz for the purpose of obtaining his opinion about Johnson's ability to return to work. It was during this September 11, 2009 conference that Dr. Katz initially opined that Johnson could return to work in a modified LPN position.

9

Importantly, Dr. Katz expressly withdrew his September 11, 2009 opinion less than two months later on November 6, 2009. Despite knowing of this withdrawn opinion, the employer's adjuster failed to pay Johnson SEBs. We, therefore, agree with the WCJ that "[a]t that point, there was no reasonable reason for the defendant's not at least discussing the matter of Ms. Johnson's disability with Dr. Gunderson." We further agree with the WCJ that "defendant had virtually no reason for withholding these payments but continued to do so."

We note that Dr. Katz opined in his August 18, 2010 deposition that Johnson was able to return to work at sedentary level duties with restrictions, thereby reinstating his previously withdrawn opinion. His deposition testimony, however, fails to justify the adjuster's failure to pay benefits after November 6, 2009. As correctly stated by the WCJ, "[t]he adjuster relied upon an initial favorable opinion about Johnson's ability to return to work and ignored the subsequent unfavorable opinion." We, therefore, agree with the WCJ that St. Frances "cannot justify its 2009 decision to terminate SEB payments based on information it received in 2010[, as] [St. Frances'] action must be gauged at the time of its initial decision to terminate benefits."

Dr. Katz's opinions contained in his deposition taken on August 18, 2010, also lack credibility and support. Specifically, Dr. Katz defined sedentary duty in his deposition testimony as "a sitting position with little, if any, movement." His testimony conflicts with Fontenot's September 30, 2008 job analysis regarding the modified LPN position. In this job analysis, Fontenot noted that "[a]lthough the majority of the tasks of this position are at sedentary level, this position will be classified sedentary to light." The job analysis stated that Johnson would occasionally be standing, walking, pushing, and pulling. The job analysis also

showed that she would be reaching frequently. This was confirmed by Fontenot's and Johnson's trial testimony.

Dr. Katz further testified that Johnson was tolerating her pain "quite nicely" given the minimal amount of medication he was prescribing. Dr. Katz testified that he asked Johnson whether her pain medication was helping, and his "assumption is since she is using it and not complaining that it is, in fact, helping her." Dr. Katz's medical record dated July 28, 2009, however, shows that she complained of significant pain and rated her pain level an eight out of ten. Dr. Katz's medical records further show that Johnson complained of pain at subsequent follow-up visits. Despite Dr. Katz's deposition testimony that he did not know the degree of pain she was experiencing, his own medical records contradict his testimony. Dr. Katz's testimony is also discredited by Johnson's testimony that she advised Dr. Katz at almost every visit that the pain medication was not alleviating her pain.

Finally, the position of the employer and its adjuster on payment of SEBs and/or refusal to re-institute payment of SEBs ignores Dr. Gunderson's opinion that Johnson cannot work. Specifically, Dr. Gunderson's medical records dated July 27, 2009, show that Johnson was disabled since her work status was listed as "[n]o [d]uty." Dr. Gunderson's subsequent deposition testimony taken on May 13, 2010, reveals that his opinion regarding her disability remained unchanged. Fontenot testified that during his meetings with Dr. Gunderson, Dr. Gunderson refused to approve Johnson's return to any level of duty with the employer.

Based on the WCJ's evaluation of Johnson's credibility and the record before this court, there is a reasonable basis for the WCJ's award of SEBs. Thus, this assignment or error is without merit.

11

## III.   Penalties and Attorney Fees

In its third assignment of error, St. Frances contends that the WCJ erred in awarding penalties and attorney fees when it had a reasonable basis to deny benefits. St. Frances contends that the WCJ erred with respect to its two awards of $2,000.00, one for improper termination of benefits and one for non-approval of a mental health evaluation. St. Frances further alleges error in the WCJ's attorney fee award in the amount of $21,120.00.

Louisiana Revised Statutes 23:1201(I) provides, in pertinent part:

> Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of a penalty not to exceed eight thousand dollars and a reasonable attorney fee for the prosecution and collection of such claims.

In order to determine whether an employer improperly acted when discontinuing workers' compensation benefits, thereby entitling a claimant to attorney fees and penalties, "courts look to facts known by the employer or insurer at the time benefits are denied." *Aultman v. Wal-Mart Stores, Inc.*, 01-623, p. 3 (La.App. 3 Cir. 10/31/01), 799 So.2d 803, 805.

Johnson's benefits were terminated on September 11, 2009, based upon Dr. Katz's opinion that Johnson could return to work in a modified LPN position. The evidence shows that Dr. Katz was her only treating physician during this time. Specifically, in his deposition, Dr. Gunderson confirmed that he was "not involved in [Johnson's] care from . . . July 29th, 2009 until she reappeared on [Dr. Gunderson's] door step on April 20, 2010." When benefits were terminated, Johnson testified that she was aware that Dr. Katz was her treating physician, as she was referred to him by Dr. Gunderson.

Two months later, however, Dr. Katz withdrew his previous opinion based upon the erroneous belief that Dr. Gunderson was still treating Johnson. Specifically, Dr. Katz's November 6, 2009 medical record reveals that confusion regarding her return to work status occurred when Johnson advised him that she was still treating with Dr. Gunderson. Dr. Katz noted that:

> There is some question with regards to her return to work status. According to the patient, it appears that Dr. Gunderson has placed her at a non-return to work status and I will have to clarify this. I will have to defer to Dr. Gunderson for determination of her return to work status so that there is no confusion with regards to that situation.

When questioned regarding the above medical record during his deposition, Dr. Katz testified that despite his belief that Johnson was able to return to work in a modified capacity, he did not want to release her only to have Dr. Gunderson declare that she was unable to return to work. Dr. Katz testified that his decision "was just a point of clarification more than anything else." We find that Dr. Katz's opinion contained in his November 6, 2009 medical record was based on Johnson's inaccurate statement given to him on that same date regarding Dr. Gunderson's continued involvement in her care.

In the present case, the WCJ determined that termination of SEBs was properly based upon Dr. Katz's November 6, 2009 medical record. The WCJ, however, should have looked to the facts known by St. Frances or its insurer when benefits were initially denied two months earlier on September 11, 2009. When benefits were terminated on September 11, 2009, St. Frances possessed Fontenot's report indicating that Dr. Katz agreed that Johnson could return to modified work with restrictions. Since Dr. Katz was the only treating physician at that time, St. Frances had a reasonable basis to rely on his opinion regarding her work status. Its action was not arbitrary and capricious; therefore Johnson is not entitled to

13

penalties. We reverse the WCJ's award of $2,000.00 for improper termination of benefits.

As for the WCJ's award arising out of St. Frances' failure to approve a mental health evaluation, the evidence presented at trial shows, more likely than not, that Johnson is entitled to evaluation and treatment, if necessary, by a mental health physician of her own choosing. The record shows that Dr. Katz made such a recommendation on August 31, 2010, after he initially stated in his deposition of August 18, 2010, that such referral was not necessary. Dr. Katz's medical records and deposition testimony support Johnson's need for mental health treatment for conditions arising from her work-related injury.

The evidence further shows that St. Frances' actions, through its adjuster, were arbitrary, capricious, and without probable cause as the adjuster failed to consider Dr. Katz's changed opinion. Specifically, the record shows that demand was made upon St. Frances on September 1, 2010, asking that a "[m]ental [h]ealth evaluation for anxiety and coping" be performed by Dr. James Blackburn. The demand was based upon Dr. Katz's August 31, 2010 referral which was attached to the demand. Despite this demand, there is no evidence showing that the adjuster conducted any investigation or recognized that Dr. Katz changed his mind about the referral. This indifference was arbitrary and capricious. Thus, the trial court did not err in awarding $2,000.00 for non-approval of a mental-health evaluation.

Finally, the evidence shows that Johnson was forced to hire an experienced workers' compensation attorney. According to his brief, he spent approximately eighty-eight hours preparing for trial, participating in trial, and preparing a post-trial brief. The attorney was also required to participate in multiple depositions. Considering that St. Frances contested this case at every stage of the proceedings

14

which encompassed four years, we find that the trial court did not err in awarding attorney fees in the amount of $21,120.00.

**IV.** <u>**Additional Attorney Fees Arising From Appeal**</u>

In his brief, Johnson's counsel seeks additional attorney fees for the time spent on preparing the appeal. "However, he did not file his own appeal nor answer the appeal, so he is not entitled to additional attorney's fees for the work performed on the appeal." *Dugas v. Aaron Rents, Inc.*, 02-1276, p. 4 (La.App. 3 Cir. 3/5/03), 839 So.2d 1205, 1208; La.Code Civ.P. art. 2133.

**DECREE**

The judgment rendered by the WCJ in favor of Lucy Johnson is affirmed in part with respect to its finding that she did not violate La.R.S. 23:1208(A), that she was entitled to SEBs for the period encompassing September 11, 2009, through May 9, 2011, that she be awarded attorney fees, and that she be awarded $2,000.00 for the failure to approve a mental health evaluation. The judgment is reversed in part with respect to the WCJ's award of $2,000.00 representing penalties for improper termination of benefits. All costs of this appeal are assessed against St. Frances.

**AFFIRMED IN PART AND REVERSED IN PART.**

15