# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 10-739

JOHN THIBODEAUX

VERSUS

MECHANICAL CONSTRUCTION CO., LLC

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - DISTRICT 4
PARISH OF LAFAYETTE, NO. 08-05247
SHARON MORROW, WORKERS' COMPENSATION JUDGE

**********

**MARC T. AMY**
**JUDGE**

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy and Billy
Howard Ezell, Judges.

**AFFIRMED.**

George S. Bourgeois, Jr.
421 N. Main Street
Opelousas, LA   70570
(337) 948-9111
COUNSEL FOR PLAINTIFF/APPELLEE:
        John Thibodeaux

Stephen M. Morrow, Sr.
James Steven Gates
Morrow, Gates, & Morrow, L.L.C.
Post Office Drawer 219
Opelousas, LA   70571-0219
(337) 942-6529
COUNSEL FOR PLAINTIFF/APPELLEE:
        John Thibodeaux

**Eric J. Waltner**
**Allen & Gooch**
**Post Office Box 81129**
**Lafayette, LA   70598-1129**
**(337) 291-1400**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Mechanical Construction Company, LLC**

AMY, Judge.

The employer appeals a judgment in favor of the claimant finding that the claimant sustained a compensable work-related accident and was entitled to reasonable and necessary medical treatment related to certain cervical complaints. For the following reasons, we affirm.

**Factual and Procedural Background**

The claimant, John Thibodeaux, alleges he was involved in a work-related accident on August 20, 2007, while working as a plumber for the defendant employer, Mechanical Construction Company, L.L.C. (MCC). At trial, the claimant testified that he was on a ladder pulling pipe through metal hangars when he started experiencing severe pain in his left shoulder. Because of the shoulder pain, the claimant believed he was having a heart attack and he alerted his supervisor, Willis Anderson. Mark Joffrion, an assistant project manager with the defendant employer, drove the claimant to St. Patrick's Hospital in Lake Charles, where it was determined the claimant was not having a heart attack and he was subsequently discharged.

Two days after his alleged accident, the claimant visited his primary care physician, Dr. Michael Felton, and complained of pain in his left shoulder and neck.[1] Dr. Felton ordered an MRI of the claimant's left shoulder and referred him to Dr. Frederick Mayer, an orthopaedic surgeon, and Dr. Vikram Parmar, an orthopaedic surgeon specializing in spinal disorders and orthopaedic trauma.

Dr. Parmar's report, dated August 29, 2007, diagnosed the claimant with a complete traumatic rotator cuff tear, a degenerative rotator cuff tear, and "multilevel spinal stenosis from C3 to C7." In that report, Dr. Parmar opined, "I think the

---

[1] With regard to the claimant's complaints, Dr. Felton in his deposition testimony admitted that the claimant's only documented pain complaint was as to his left shoulder. However, he explained that after the August 22, 2007 visit, he referred the claimant to Dr. Parmer, a spine and neck surgeon. Dr. Felton stated "[the claimant] had to have a neck complaint at some point, because we wouldn't have sent to Dr. Parmer[.]"

majority of the symptoms are coming from this acute rotator cuff tear. I will address the spine pathology after the shoulder is fixed." In a report dated September 6, 2007, Dr. Mayer stated that the claimant "presents with degenerative arthritis in the right and left AC joints with complete tears of the supraspinatus tendons on the left and right shoulders with restriction of active abduction in the left shoulder only." He recommended surgery on the claimant's left shoulder to repair his torn rotator cuff, which was subsequently performed on January 4, 2008.

On June 11, 2008, the claimant filed a Disputed Claim for Compensation against MCC and its workers' compensation insurer, The Gray Insurance Company, seeking the authorization of medical treatment by Dr. Parmar and attorney fees and penalties for the untimely payment of indemnity benefits. The employer and insurer answered, generally denying the claimant's allegations. After being granted leave of court, the employer and insurer filed an amended answer asserting that the claimant forfeited entitlement to benefits in that he "denied pre-alleged accident complaints, injury or problems to other medical providers, including but not limited to Dr. Parmar" in contravention of La.R.S. 23:1208 and denied prior injuries and complaints in a MCC post-hire medical questionnaire in contravention of La.R.S. 23:1208.1.

Following trial, the workers' compensation judge issued judgment: finding the claimant proved that he sustained a compensable accident in the course and scope of employment; finding the claimant proved that his neck and cervical spine were injured in the work-related accident and that he was entitled to treatment for his neck and cervical spine; finding that the claimant's lower back was not injured in the subject accident; and that the claimant was not entitled to penalties and attorney fees. In its oral reasons for judgment, the workers' compensation judge found that the claimant did not forfeit benefits for violating La.R.S. 23:1208 or La.R.S. 23:1208.1.

2

The employer and insurer appeal, asserting that the workers' compensation judge erred in: (1) denying its defense under La.R.S. 23:1208; (2) finding that the claimant met his burden of proving he was involved in a compensable accident; (3) finding that the claimant met his burden of proving a causal relationship between his cervical complaints and the alleged accident; and (4) denying its defense under La.R.S. 23:1208.1.

**Discussion**

*Louisiana Revised Statutes 23:1201*

The employer first argues that the trial court erred in denying its defense under La.R.S. 23:1208 in light of the claimant's alleged misrepresentations of his prior conditions in his deposition, a recorded interview, and to his treating physicians.

Louisiana Revised Statutes 23:1208 provides the parameters for determining whether a claimant has committed fraud for the purpose of obtaining workers' compensation benefits. *Campbell v. City of Leesville*, 07-1061 (La.App. 3 Cir. 1/30/08), 974 So.2d 908, *writ denied*, 08-491 (La. 4/25/08), 978 So.2d 366. It provides, in pertinent part:

> **§ 1208. Misrepresentations concerning benefit payments; penalty**
>
> A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
>
> . . . .
>
> E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.

An employer claiming that an employee has forfeited his or her rights under La.R.S. 23:1208 must prove "that (1) there is a false statement or representation, (2) it is willfully made, and (3) it is made for the purpose of obtaining or defeating any

3

benefit or payment." *Resweber v. Haroil Constr. Co.*, 94-2708, p. 7 (La. 9/5/95), 660

So.2d 7, 12. The supreme court further explained:

> [T]he statute does not require the forfeiture of benefits for any false statement, but rather only false statements that are *willfully made for the purpose of obtaining benefits*. It is evident that the relationship between the false statement and the pending claim will be probative in determining whether the statement was made willfully for the purpose of obtaining benefits. Clearly, an inadvertent and inconsequential false statement would not result in forfeiture of benefits.

*Id.* at 16.

In her oral reasons for judgment, the workers' compensation judge stated:

With respect to a claim for 1208:

> Mr. Thibodeaux did deny prior neck problems. The records do show prior complaints of neck problems. I don't feel that Mr. Thibodeaux was intentionally misrepresenting it. He seemed very surprised at the prior neck complaint found in the records. And I accept that as genuine. You know, I can say it's a coin toss. I don't know. But the burden of proving fraud is on the employer/insurer, on the defendant; and each element has to be proven. I cannot say that the burden has been meant [sic] proving willfulness of the misrepresentations. There were misrepresentations. I cannot say they were willful.
>
>     . . . .
>
> I did find Mr. Thibodeaux to be a credible witness. He never got defensive or appeared disingenuous under cross-examination. While he, as I indicated, seemed surprised or was unable to explain the references to prior neck pain - - I think there was just one reference to prior shoulder pain, but I'm not positive. Minimal, minimal on the shoulder. He was not able to explain that. At the same time, his demeanor seemed to be more of: "I wish I had a better answer," than "I just don't know." But it was not defensive or deceptive. I did find his testimony to be credible.

A workers' compensation judge's determination as to whether a claimant has

made a false statement, willfully, for the purpose of obtaining workers' compensation

benefits is a finding of fact, and is, therefore, subject to the manifest error standard

4

of review. *Jim Walter Homes, Inc. v. Guilbeau*, 05-1473 (La.App. 3 Cir. 6/21/06), 934 So.2d 239. Further,

> When findings are based on determinations regarding the credibility of witnesses, the manifest error--clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.

*Rosell v. ESCO*, 549 So.2d 840, 844-45 (La.1989) (citations omitted).

The employer asserts that, despite medical records to the contrary, the claimant denied prior neck injuries in a recorded interview with an insurance claim adjuster following the alleged accident on September 10, 2007. The employer also points to the claimant's deposition, taken on September 16, 2008, wherein the claimant denied previous arthritis in the neck. Lastly, the employer asserts that the claimant made misrepresentations to his treating physicians, Dr. Parmar and Dr. Mayer.

The record reveals a pre-operation questionnaire filled out by the claimant on January 16, 2006, prior to a procedure the claimant underwent to discover if he had cancer. On that questionnaire, the claimant indicated that he had arthritis, joint pain, and neck pain. Following the "arthritis" notation, the questionnaire states, "LIMITED ROM TO B/L SHOULDER." Following the "neck pain" notation, there is no explanatory statement as to the kind of neck pain. In a medical record by the same hospital dated on January 12, 2006, it states that the claimant has arthritis to the

5

arms and neck. Further, there are several medical records documenting complaints of neck pain.

In the recorded interview referred to by the employer, the adjuster asked the claimant if he had back or neck injuries, the claimant replied "Ugh no, what they say that arthritis is in my neck and my back when they took the test." He related that he had surgery in 1989 on three ruptured discs in his back related to a previous work-related accident. He explained that he returned to work in 1993 or 1994 and had not had any subsequent treatment in regard to that surgery.

The employer also points to the claimant's deposition, taken on September 16, 2008, to support its assertion that the claimant forfeited benefits under La.R.S. 23:1208.1. In the deposition, the following exchange took place:

Q      Were you ever told that you had a disc problem or disc herniation or a disc bulge or arthritis of any type involving your neck before August 20, 2007?

A      No. I got three messed up discs.

Q      And I'm going to get to that in a second, but I'm asking you right now about your neck.

A      No, I just wanted to make sure that - -

Q      That you want to clarify. I appreciate that.

A      Yeah.

Q      But the answer to my question is no?

A      No, my neck.

In Dr. Parmar's and Dr. Mayer's medical records, there is no recordation that the claimant related a previous history of neck problems, although they do refer to the claimant having arthritis in his right arm and hand.

6

After review of the record, we find the workers' compensation judge's finding that the claimant did not willfully make misrepresentations about his neck supported by the record. The record reveals that there were inconsistencies in the claimant's testimony and medical records as to whether he complained of neck pain or had, previous to this incident, an arthritis diagnosis. However, the last part of the *Resweber* test, that the false statements were made for the purpose of obtaining benefits, was not met. *Resweber*, 660 So.2d 7. In the claimant's recorded interview, which took place after the alleged accident, he admitted that he was told he had arthritis in his neck. He also admitted to having a work-related accident in 1989 resulting in three ruptured discs. While the employer asserts misrepresentations by the claimant relating to neck and back injuries, it cannot be said that they were willful and for the purpose of obtaining benefits, when in an interview, taken shortly after the alleged accident, the claimant admitted directly to the adjuster to having neck arthritis and prior back injuries.

This assignment of error is without merit.

*Compensable Accident*

The employer next asserts that the workers' compensation judge erred in finding that the claimant met his burden of proving he was involved in a compensable accident. Specifically, the employer asserts the existence of "overwhelming evidence" that discredits the claimant's version of events of the alleged accident.

An "accident," for the purposes of workers' compensation, is defined in La.R.S. 23:1021(1) as "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a

7

gradual deterioration or progressive degeneration." In *Bruno v. Harbert Intern., Inc.*,

593 So.2d 357, 361 (La.1992), the supreme court stated:

> [T]he plaintiff-worker in a compensation action has the burden of establishing a work-related accident by a preponderance of the evidence. *Id*.; *Nelson, supra.* A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. *West v. Bayou Vista Manor, Inc.*, 371 So.2d 1146 (La.1979); Malone and Johnson, *13 Louisiana Civil Law Treatise*, *Workers' Compensation*, § 253 (2d Ed.1980). Corroboration of the worker's testimony may be provided by the testimony of fellow workers, spouses or friends. Malone & Johnson, *supra*; *Nelson, supra*. Corroboration may also be provided by medical evidence. *West, supra*.

In her oral reasons for judgment, the workers' compensation judge stated:

> I am going to rule in favor of Mr. Thibodeaux in the following fashion: I do find that an accident did occur while in the course of employment and arising from that employment on August 20, 2007. I believe it's very clear from the evidence and from the testimony that Mr. Thibodeaux believed he was having a heart attack. I think that explains why there was very scant, if any, history by him of his job activities at the time this happened or what particular complaints he was having with a great degree of specificity because he thought he was a having a heart attack, and a heart attack wouldn't really depend on what activities were at that point. He clearly complained of numbness in his arm, and in the St. Pat's records it does also show that he was complaining of pain. If you look under the pain assessment: "Are you having pain now? Yes."

> So to the extent that Mr. Waltner's cross-examination of Mr. Thibodeaux implied that there was no complaints of pain that day, there is a mention of it; although, it is one brief mention in several pages of records. "Pain is acute, pain site modifer left, location arm." He was having pain as documented by the St. Pat's notes.

> And Dr. Parmer's report of August 29, 2007 does give the activity or the history - - the correct history one would look for with respect to a work-related accident as opposed to a heart attack, and that was nine days later.

> I think Dr. Felton was very clear in his deposition that he would not have sent Mr. Thibodeaux for an MRI of the neck and shoulder had there not been complaints and had there not been complaints of such significance that he thought it needed immediate attention. Further, he testified that he would not have sent Mr. Thibodeaux to a spine

8

specialist and a shoulder specialist had he not been convinced of the severity or the significance of the complaints.

Dr. Felton also indicated that in the course of his treatment of Mr. Thibodeaux prior to August of 2007, he did not find Mr. Thibodeaux to be a complainer or whiney in any sense. So, he was impressed with the degree of pain Mr. Thibodeaux complained of and also discussed that Mr. Thibodeaux had been given pain medication in connection to the August 20, 2007 accident, and the medication had not relieved his pain. That is also indicated in Dr. Parmar's report.

So, I do find an accident occurred.

The employer asserts that the deposition of Jim Stevens, the claimant's supervisor, casts doubt on the claimant's version of events. Mr. Stevens testified that, on the morning of the alleged accident, he instructed the claimant and his apprentice to take some pipe out of an area they had previously worked on the day before. He explained that the apprentice does the labor work while, in this case the claimant, supervised. He related that after about fifteen or twenty minutes, the claimant came to where he was and indicated that he was having chest pains. The decision was then made to take the claimant to the hospital. He testified that after the claimant left to go to the hospital, he went to where the claimant had been working and observed that "the project had not been worked on." Mr. Stevens related that at no point in time on the day of the alleged accident did the claimant tell him he had been hurt moving pipe.

The employer asserts that this differs from the claimant's testimony. First, the claimant denies having seen Mr. Stevens on the morning before the alleged accident. Further, the claimant testified that he had been working for about an hour, as opposed to fifteen or twenty minutes, before the alleged accident took place.

9

The employer also contends that the claimant's burden of proving an accident is hampered by the fact that the emergency room records make no reference to any kind of accident.

A workers' compensation judge's "determinations as to whether the worker's testimony is credible and whether the worker has discharged his or her burden of proof are factual determinations not to be disturbed on review unless clearly wrong or absent a showing of manifest error." *Bruno*, 593 So.2d at 361. In her oral reasons for judgment, the workers' compensation judge made no mention of Mr. Stevens' testimony; however, she did indicate that she believed the claimant and that she found his testimony to be credible. Further, she found that his testimony was corroborated by Dr. Felton's testimony. We find this determination supported by the record.

Here, the employer is correct that the emergency room records make no mention of a specific accident or injury. However, this was explained by the claimant in his testimony, as follows:

> The reason why I didn't say that I had any injury is because I didn't know what I had. I thought it was a heart attack. When they told me it wasn't a heart attack and it wasn't a stroke and Dr. Felton sent me there, he didn't tell me I had a pulled muscle or tore muscle or whatever. So I didn't know what I had.

Dr. Felton testified that the symptoms the claimant suffered, a sudden onset of left shoulder pain, can mimic the same symptoms of a heart attack. He responded that the claimant's injuries were consistent with a description that the claimant "was running pipe overhead and doing a pulling motion when [he] experienced a sudden onset of pain and thought [he] was having a heart attack." Dr. Mayer testified that he believed that the claimant had a pre-existing degenerative incomplete rotator cuff tear which was completed when he working with the pipe on the day in question.

In light of the claimant's testimony and the corroborating testimony of Dr. Felton and Dr. Mayer, we find that the workers' compensation judge's determination that the claimant met his burden of proving an accident is supported by the record.

This assignment of error is without merit.

*Causal Relation*

In its third assignment of error, the employer asserts that the workers' compensation judge erred in finding that the claimant met his burden of proving a causal relationship between his cervical complaints and the alleged work-related accident.

A claimant must prove by a preponderance of the evidence that a work-related occurred and that the accident had a causal relationship to the disability claimed. *Dousay v. Dousay Floor Covering*, 07-195 (La.App. 3 Cir. 9/12/07), 966 So.2d 677, *writ denied*, 07-2023 (La. 12/07/07), 969 So.2d 639. "An employee's disability is presumed to have resulted from the accident if before the accident, the injured employee was in good health, but commencing with the accident, symptoms of the disabling condition appeared and continuously manifested themselves afterwards." *Marks v. 84 Lumber Co.*, 00-322, p. 3 (La.App. 3 Cir. 10/11/00), 771 So.2d 751, 754. For this presumption to arise, it requires either sufficient medical evidence to show a reasonable possibility of a causal connection between the accident and disabling condition, or that the nature of the accident, when combined with the other facts of the case, raises a natural inference of a causal connection through human experience. *Id.* "A claimant with a pre-existing disease or infirmity is not disqualified from receiving benefits if he can prove that the workplace accident aggravated, accelerated, or combined with the pre-existing condition to produce the claimed disability." *Wells v. Dunham Price, Inc.*, 04-209, p. 6 (La.App. 3 Cir. 9/29/04), 883 So.2d 495, 500.

11

In her oral reasons for judgment, the workers' compensation judge stated:

I also find that the neck complaints were made immediately after that accident, immediately or very close in time after that accident. Unfortunately, for everybody involved, Dr. Parmar's report did not surface until some time later. And Dr. Felton's records were not documented as - - the documentation in his file was not completely consistent with the deposition testimony. He did testify as I indicated that the neck and shoulder complaints were significant, that there were neck complaints; and therefore, he got the MRI. That was not documented in his notes.

. . . .

I would note with respect getting back to the neck - - or continuing on. There were prior complaints. I think that was very well established, but they were secondary to other treatment. There was not established any independent treatment for the neck prior to the work accident. Also, the complaints were never significant enough for there to have been diagnostic testing. Of course, it would have been nice to be able to compare any diagnostic testing prior to August of '07 to that done after August 20th of '07. But there are no such diagnostic tests; and therefore, leads me to believe that those complaints were not significant enough to have been explored any further.

Assuming that Mr. Thibodeaux did have pre-existing arthritis and other conditions in his and/or shoulder, he did continue to work, apparently, without any problem. He apparently did take some days off of work to followup on the testing for cancer, but it does not appear that he missed any more than a day or few hours at a time doing that treatment.

So I do believe that he is entitled to the presumption that applies. Even though he did have pre-existing problems, the disability did not occur until immediately after the accident; and therefore, he is entitled to the presumption that that the disability was caused by the accident in some combination or alone or some combination with the pre-existing condition.

. . . .

Now as far as where we go from here. My finding is that an accident did occur, that fraud is not sufficiently established, and that the cervical complaints are related to the August 20, 2007 accident. At this point, I believe and as Mr. Waltner pointed out, Mr. Bourgeois' letter referred to a neck surgery recommendation. That's not found anywhere in the records. So, at this point, I am simply stating the cervical complaints are related to the accident. Mr. Thibodeaux is entitled to obtain reasonable and necessary treatment relating to the accident. I

don't know what the complaints are at this time. I don't know if there is an aggravation of a pre-existing condition that has since subsided. I don't know if it's gotten worse. I don't think any of us do because he hasn't received any neck treatment in very long time.

. . . .

I also find that any low back complaints are not related to the August 20, 2007 accident. There was some mention in some of the records about low back complaints. I don't think the records adequately establish any causal relation or presumption in favor of Mr. Thibodeaux with respect to the low back.

We find that the workers' compensation judge's determination that the cervical complaints were related to the work accident is supported by the record. Here, as noted by the workers' compensation judge, the record reveals that the claimant, although possibly suffering from arthritis or other conditions, was not disabled before the accident in that he was working for the employer without any known problems. The claimant testified that since the accident, he has not returned to work. He stated that his "neck still hurts and [his] arm still hurts" and he no longer has the strength to pick up the same things he used to be able to before the accident. Also, Dr. Felton testified that based on the claimant's complaints at his visit immediately after the alleged accident, he ordered an MRI for the cervical spine and the shoulder, believing his pain to be caused by problems with both. In his deposition, he confirmed that he believed the problems with the shoulder and neck were related to the work event. Thus, based on the sequence of events, the claimant's testimony, and the medical evidence, we find that the record supports the workers' compensation judge's determination that the cervical problems were related to the work accident.

This assignment of error lacks merit.

*Louisiana Revised Statutes 23:1208.1.*

In the employer's last assignment of error, it argues the workers' compensation judge erred in denying its defense under La.R.S. 23:1208.1.

Louisiana Revised Statutes 23:1208.1 reads:

> Nothing in this Title shall prohibit an employer from inquiring about previous injuries, disabilities, or other medical conditions and the employee shall answer truthfully; failure to answer truthfully shall result in the employee's forfeiture of benefits under this Chapter, provided said failure to answer directly relates to the medical condition for which a claim for benefits is made or affects the employer's ability to receive reimbursement from the second injury fund. This Section shall not be enforceable unless the written form on which the inquiries about previous medical conditions are made contains a notice advising the employee that his failure to answer truthfully may result in his forfeiture of worker's compensation benefits under R.S. 23:1208.1. Such notice shall be prominently displayed in bold faced block lettering of no less than ten point type.

To prove forfeiture under La.R.S. 23:1208.1, the employer must prove (1) an untruthful statement; (2) prejudice to the employer; and (3) compliance with the notice requirements of the statute. *Nabors Drilling USA v. Davis*, 03-136 (La. 10/21/03), 857 So.2d 407. In *Jeffers v. Kentucky Fried Chicken*, 08-1380, p. 12-13 (La.App. 3 Cir. 4/1/09), 7 So.3d 812, 820, *writ denied*, 09-956 (La. 6/19/09), 10 So.3d 738, a panel of this court stated:

> In determining whether an employer has been prejudiced by an untruthful response, the supreme court adopted the "inevitability test," under which the employer must demonstrate a direct relation between the two injuries, such that the previous injury rendered it inevitable or very likely that the subsequent injury would occur. *See Wise v. J.E. Merit Constructors, Inc.*, 97-684 (La.1/21/98), 707 So.2d 1214. This lays a very difficult test before the employer, and with good reason: forfeiture of benefits is a harsh remedy. It should require very strict proof.

In its oral reasons for judgment, the workers' compensation judge stated:

> With respect to the 1208.1 claim: Arthritis is noted in the statute as a pre-existing condition which would qualify as significant - - I don't know the exact statutory language off the top of my head. But arthritis

14

is one of those pre-existing conditions that is presumed to entitle the employer to Second Injury Fund relief; something along those lines. And by denying arthritis, the question [that] arises is whether that did prejudice the employer or the insurer's rights to recover from the Second Injury Fund. Again the employer bears that burden of proving 1208.1.

I cannot say that there is sufficient evidence in the record of prejudice to the employer. I cannot say that the prior condition of the neck or shoulders are directly related to his current condition. I cannot say that his rotator cuff tear or his cervical herniated discs were inevitable or very likely to have occurred based on the pre-existing condition. Nor can I say that there was a merger between his prior condition and the condition that was aggravated or caused by the work accident to make him more disabled and to require the payment of additional funding. See the *Nabor's* case.

So, I cannot find that 1208 or 1208.1 have been violated; although, I do state that as I indicated with the 1208, there are misrepresentations on the 1208.1 for, the Second Injury Fund form. I also find that it appears that the notice requirements were met. However, I cannot make a finding in the employer/insurer's favor as to prejudice.

We find the record supports the workers' compensation judge's determination that the employer did not prove prejudice in order to prevail under La.R.S. 23:1208.1. While, as described above, there was testimony by the claimant's treating physicians that the work-related accident may have aggravated a pre-existing condition, there is no testimony in the record indicating that the pre-existing condition made the claimant's current disability inevitable. As such, we find no error in the workers' compensation judge's ruling.

## DECREE

The judgment of the workers' compensation judge is affirmed. All costs of this appeal are assessed against the appellants - Mechanical Construction Company, LLC and Gray Insurance Company.

**AFFIRMED.**

15