# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

## 12-594


MONICA VITA

VERSUS

CITY OF LAKE CHARLES

************

**APPEAL FROM THE**
**OFFICE OF WORKERS' COMPENSATION, DISTRICT 3**
**PARISH OF CALCASIEU, NO. 10-07925**
**CHARLOTTE L. BUSHNELL, WORKERS' COMPENSATION JUDGE**

************

**JAMES T. GENOVESE**
**JUDGE**

************

Court composed of Jimmie C. Peters, J. David Painter, and James T. Genovese, Judges.

**AFFIRMED IN PART;**
**REVERSED IN PART;**
**AND RENDERED.**

Thomas E. Townsley
711 Pujo Street
Lake Charles, Louisiana 70601
(337) 430-0994
COUNSEL FOR PLAINTIFF/APPELLEE:
    Monica Vita

**Christopher E. John**
**Assistant City Attorney**
**Post Office Box 900**
**Lake Charles, Louisiana 70602-0900**
**(337) 491-1523**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **City of Lake Charles**

**GENOVESE, Judge.**

In this workers' compensation case, Defendant/Employer, the City of Lake Charles (City), appeals the judgment of the Office of Workers' Compensation in favor of Plaintiff/Employee, Monica Vita, finding she suffered a compensable lumbar injury during the course and scope of her employment. Ms. Vita has answered the appeal relative to the denial of her claim for penalties and attorney fees. For the reasons that follow, we affirm in part, reverse in part, and render.

## FACTS AND PROCEDURAL HISTORY

Ms. Vita was injured in the course and scope of her employment with the City when she fell from a ladder on March 4, 2008. The City instituted payment of medical and indemnity benefits. An issue arose during the course of Ms. Vita's medical treatment which prompted the filing of a Disputed Claim for Compensation when the City did not authorize medical treatment for her lower back; however, the City continued to pay Ms. Vita indemnity benefits and medical expenses resulting from the neck injury which she sustained. Thus, the only issues adjudicated at trial on October 6, 2011, were whether Ms. Vita's lumbar complaints were causally related to her work accident and whether she was entitled to penalties and attorney fees for the City's nonpayment of these medical expenses.

Following a trial on the merits, the workers' compensation judge (WCJ) ruled that Ms. Vita's lumbar injury was causally related to the March 4, 2008 work-related accident, thereby entitling her to payment of these medical expenses. Additionally, the WCJ denied Ms. Vita's claim for penalties and attorney fees. The judgment also ordered that an independent medical examination (IME) be

performed "to determine the claimant's need for surgery."[1]   A judgment in accordance therewith was signed on February 10, 2012.

On February 22, 2012, the City filed a Motion for New Trial, seeking to have the WCJ's order relating to the IME expanded to also have the doctor render an opinion on whether the lumbar injury was causally related and to do so prior to the WCJ rendering a final decision.   The City's motion was denied, and a concomitant judgment was signed on March 14, 2012.

## ASSIGNMENTS OF ERROR

The City asserts that the trial court erred in:  (1) finding that Ms. Vita's lumbar injury was causally related to her work-related accident; and (2) denying its Motion for New Trial.  In her answer to appeal, Ms. Vita asserts error by the WCJ in not awarding her penalties and attorney fees.

## LAW AND DISCUSSION

*Causation*

In its first assignment of error, the City argues that the WCJ erred in finding that Ms. Vita's lumbar injury was causally related to her March 4, 2008 accident because she "failed to prove causation by a reasonable medical preponderance in view of [her] lack of credibility as a corroborative witness and extensive medical [evidence] showing no back complaints or treatment for almost one year."   We disagree.

> The claimant bears the burden of proving, by a preponderance of the evidence, that the accident caused his injury and that the injury caused his disability.  *Hunter v. Alliance Compressors*, 06-100 (La.App. 3 Cir. 6/21/06), 934 So.2d 225.  Causation is a question of fact that will be reviewed under the manifest error standard of review.  *Id.*

---

[1] An IME had been performed by Dr. Harold Granger on July 26, 2010; however, Dr. Granger had not been provided with Ms. Vita's complete medical records.  Therefore, the WCJ did not rely upon the IME physician's opinion when rendering her decision.

*Baca v. Natchitoches Parish Hosp.*, 06-1132, p. 10 (La.App. 3 Cir. 2/7/07), 948 So.2d 1205, 1211.

Accordingly, Ms. Vita bears the burden of establishing the causal connection between her work-related accident and any resultant lumbar injury by a preponderance of the evidence. *Thibodeaux v. Mech. Constr. Co., LLC*, 10-739 (La.App. 3 Cir. 12/8/10), 52 So.3d 1084. "The test for determining the causal relationship between an accident and subsequent injury is whether the claimant proved through medical or lay testimony that it is more probable than not that the accident caused the subsequent injuries." *Elder v. Sierc Inc. Oil & Fuel*, 10-144, p. 8 (La.App. 5 Cir. 10/12/10), 51 So.3d 54, 59 (quoting *Newsome v. New Orleans Saints*, 08-311, p. 7 (La.App 5 Cir. 5/14/08), 996 So.2d 637, 640).

In this case, the medical records reflect that on the day of her accident, Ms. Vita treated at Urgent Care for complaints of dizziness and neck pain. Her diagnosis was a closed head injury and neck strain/pain. She returned to Urgent Care the next day, and a CT scan of her heard was ordered which confirmed the diagnosis.

Ms. Vita then saw Dr. Craig Morton, with the Center for Orthopedics, on June 11, 2008, with a chief complaint of neck pain. She received trigger point injections and returned for one visit on June 18, 2008, which again focused on cervical complaints.

While seeing Dr. Morton, Ms. Vita was also treated by Dr. Damon Cormier with Nature's Way Chiropractic Center. Notably, at her first visit on June 4, 2008, Ms. Vita complained of dizziness, headaches, neck pain, and low back pain. The pain diagram completed by Ms. Vita indicated that her head was hurting as well and her neck and upper and lower back. According to Dr. Cormier, upon examination at her initial visit, Ms. Vita had objective indications of injury to both

3

her neck and her back. Dr. Cormier's diagnosis was "cervical sprain/strain type injury with . . . some radiating pain down from the neck into the shoulders, [and] cervical cranial syndrome, meaning her cervical areas were causing some headaches[.]" Dr. Cormier also diagnosed "her with muscle spasms in the cervical, thoracic, and lumbar region." His diagnosis also included "subluxation at the C2 area, the L4 area, and in the thoracic region." Ms. Vita's complaints on subsequent visits included pain in both her neck and back.

According to Dr. Cormier, at Ms. Vita's last visit on June 23, 2008, she continued to complain of ongoing headaches, neck, and mid-back and lower back pain. Dr. Cormier also noted that her symptoms were corroborated by a January 14, 2010 MRI that revealed a tear at L4-5, which was consistent with the injury he found upon examination. Ultimately, Dr. Cormier found that Ms. Vita's low back complaints were consistent with his findings, and he was of the opinion that Ms. Vita's low back injury was due to her fall from the ladder on March 4, 2008.

Ms. Vita also treated with Dr. Dale Bernauer, an orthopedic surgeon, on June 24, 2008. Dr. Bernauer explained that Ms. Vita did indicate on her patient intake form that she was having neck pain and back pain; however, she did not mention back pain to him during the exam. Dr. Bernauer's initial diagnosis was a cervical strain. Dr. Bernauer confirmed that during the course of his treatment through March 4, 2009, he did not document any lumbar complaints. When questioned about the omission of lumbar complaints from his records, Dr. Bernauer opined that by the time Ms. Vita came to see him, her lumbar complaints, which had been treated by the chiropractor, had improved, but her neck remained symptomatic.

We note that Dr. Bernauer candidly admitted an oversight on his part in not asking Ms. Vita about the lumbar complaints that she had mentioned in her initial

4

paperwork. He also testified that Ms. Vita did in fact voice complaints to the physical therapist and the pain management physician to whom she was referred. Ultimately, Dr. Bernauer concluded that "she has a fairly significant problem in her back which [he] feel[s] like probably evolved from a small injury to her back at the time of this fall but has evolved over time so that it worsened." Dr. Bernauer, like the WCJ, attributed the absence of Ms. Vita's lumbar complaints to her "personality and education status more than anything."[2]

Upon referral from Dr. Bernauer, Ms. Vita also saw Dr. Christopher Lew, with GulfCoast Pain Institute, on March 19, 2009. Dr. Lew's records indicate that her primary complaints were neck and low back pain which radiated into her legs. These complaints were consistent with the initial patient questionnaire and the pain diagram completed by Ms. Vita. Dr. Lew's initial diagnosis relative to her neck was cervical strain with radicular and myofacial pain. With regard to her lower back, Dr. Lew's diagnosis was lumbar strain and possible disc or facet disease. Dr. Lew ordered a lumbar MRI, performed on January 14, 2010, which revealed that Ms. Vita had bulging discs at L4-5 and L5-S-1, and a small annular tear at L4-5. Additionally, Dr. Lew's notes of March 12, 2010, reflect "neck and back pain since work[-]related injury." Moreover, his records refer to "neck and low back pain due to work[-]related injury."

Given her complaints, Dr. Bernauer referred Ms. Vita to Dr. James H. Eddy with the Interventional Pain Management Clinic. A discogram demonstrated positive findings at both L4-5 and L5-SI, and the post-discogram CAT scan showed tears at L4-5 and L5-S1, all of which were consistent with her lumbar complaints.

---

[2] The City questioned Ms. Vita's credibility at trial and again in brief to this court. In this regard, we note that the WCJ expressly distinguished Ms. Vita as a claimant "with a limited intellect" as Dr. Bernauer similarly intimated.

We acknowledge the evidence of record that two physicians did not causally relate Ms. Vita's lumbar complaints to her work-related accident. On April 6, 2010, Ms. Vita saw Dr. Stanley Foster, with Acadiana Orthopedic Group, for a second medical opinion. She also saw Dr. Harold Granger, with Hamilton Medical Group, on July 26, 2010, for an IME. Although neither of these doctors related Ms. Vita's lumbar complaints to her work-related accident, neither of them had been provided with the patient's complete medical history showing her complaints of lumbar pain and the treatment that she received for same. Consequently, both of these physicians were rendering opinions on causation with the understanding that Ms. Vita was without lumbar complaints for almost one year, which was factually inaccurate. Additionally, as Dr. Bernauer explained, the diagnostic testing objectively confirmed that Ms. Vita suffered from significantly more than degenerative changes or a mere contusion as these doctors had concluded.

For the foregoing reasons, we find that the opinions of Dr. Cormier, Dr. Bernauer, and Dr. Lew all support the WCJ's conclusion that Ms. Vita met her burden of proving "that she suffered a lumbar injury during the course and scope of her employment of March 4th, 2008, and that she is entitled to medical benefits under the Workers' Compensation Act." Ms. Vita obviously voiced lumbar complaints to Dr. Cormier, who rendered treatment for same. These same complaints were documented by her in the initial intake forms with Dr. Bernauer's office, which he admittedly overlooked due to her more prevalent complaints of cervical pain. She again voiced lumbar complaints to Dr. Lew, as documented in his records. Finally, the diagnostic testing revealed positive findings at L4-5 and L5-S1, which is consistent with Ms. Vita's complaints and constitutes corroborating objective medical evidence. Accordingly, we affirm the WCJ's ruling on the issue of causation.

6

*Motion for New Trial*

In its second assignment of error, the City contends that the WCJ erred in denying its Motion for New Trial; however, the City's motion for appeal does not designate for appellate review the March 14, 2012 judgment denying its Motion for New Trial. The WCJ's order only grants the City's appeal from the judgment orally rendered on October 6, 2001, and signed by the court February 10, 2012. Therefore, the WCJ's denial of the City's Motion for New Trial is not properly before this court and will not be considered.

*Answer to Appeal*

Ms. Vita has answered the appeal, alleging error by the WCJ in not awarding her penalties and attorney fees. We agree.

> Louisiana Revised Statutes 23:1201(E) provides: "[m]edical benefits payable under this Chapter shall be paid within sixty days after the employer or insurer receives written notice thereof." Failure to pay timely subjects the employer to penalties and attorney fees unless the claim is reasonably controverted or nonpayment results from conditions over which the employer had no control. La.R.S. 23:1201(F)(2). "A claim is reasonably controverted when the employer or insurer produces factual or medical information that reasonably counters the claimant's evidence." *Bourgeois v. Brown's Deli & Mkt., Inc.*, 09-290, p. 7 (La.App. 3 Cir. 10/14/09), 21 So.3d 1072, 1077. A WCJ's decision on whether to award penalties and attorney fees is subject to great discretion which will not be disturbed absent an abuse of discretion. *Briscoe v. McNeese State Univ.*, 11-872 (La.App. 3 Cir. 12/7/11), 80 So.3d 700.

*Creole Steel, Inc. v. Stewart*, 11-1285, pp. 1-2 (La.App. 3 Cir. 3/7/12), 86 So.3d 757, 759 (alteration in original).

Ms. Vita asserts that "[t]he City cannot rely upon its own error or the failure of its adjuster to obtain a full set of medical records from each physician, then allege that it reasonably controverted this claim." In fact, it was the lack of complete medical records that led the City to question Ms. Vita's lumbar injury. As discussed above, Ms. Vita did express lumbar complaints to Dr. Cormier,

Dr. Bernauer, and Dr. Lew, which were subsequently corroborated by objective testing. Additionally, according to Dr. Cormier, he ordered an x-ray of her "lumbar spine which would have indicated it would have been a complaint or reason to look at the lumbar spine on the first visit." Thereafter, his billing codes reflected manipulation of the cervical, thoracic, and lumbar areas as early as Ms. Vita's initial visit.

For these reasons, we find that the City did not reasonably controvert this claim. Therefore, we reverse the WCJ's judgment denying Ms. Vita's request for penalties and attorney fees and render judgment in favor of Ms. Vita assessing the City with a $2,000.00 penalty and $5,000.00 in attorney fees.

Finally, we note that Ms. Vita, in her brief, contends that she is entitled to an "award [of] attorney fees for the defense of this appeal." However, in her answer to appeal, Ms. Vita only asserts that the WCJ erred "in not awarding penalties and attorney fees in this matter." Therefore, she requests "penalties and attorney fees be granted, as well as interest on the penalties and attorney fees be added to [her] award."

Although Ms. Vita filed an answer to appeal, the only issue raised therein is the WCJ's denial of her claim for penalties and attorney fees. Ms. Vita's answer to appeal fails to request additional attorney fees for work necessitated by the present appeal; therefore, we cannot address her argument in brief that she is entitled to an "award [of] attorney fees for the defense of this appeal" as that issue is not properly before this court. *See Trahan v. City of Crowley*, 07-266 (La.App. 3 Cir. 10/3/07), 967 So.2d 557, *writs denied*, 07-2462, 07-2471 (La. 2/15/08), 976 So.2d 185, 187 (citing La.Code Civ.P. art. 2133; *Roszell v. Nat'l Union Fire Ins. Co.*, 602 So.2d 87 (La.App. 3 Cir.), *writ denied*, 605 So.2d 1365 (La.1992); *Lolan v. La. Indus.*, 95-602 (La.App. 3 Cir. 11/2/95), 664 So.2d 616).

8

## DECREE

For the reasons stated herein, the judgment of the Office of Workers' Compensation finding Ms. Vita's lumbar injury to be causally related to her work-related accident of March 4, 2008, is affirmed. We reverse that portion of said judgment denying Ms. Vita's claim for penalties and attorney fees, and we render judgment herein in favor of Monica Vita and against the City of Lake Charles in the amount of a $2,000.00 penalty and $5,000.00 in attorney fees. We deny Ms. Vita's claim for attorney fees on appeal. Costs of this appeal in the amount of $321.00 are assessed to the City of Lake Charles in accordance with La.R.S. 13:5112.

**AFFIRMED IN PART, REVERSED IN PART; AND RENDERED.**