# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 14-1248

JASON MONTOU

VERSUS

BOISE CASCADE COMPANY

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 3
PARISH OF CALCASIEU, NO. 13-02014
SAM L. LOWERY, WORKERS' COMPENSATION JUDGE

**********

## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Billy Howard Ezell, and John E. Conery, Judges.

**AFFIRMED.**

**Charles William Farr**
**1305 W. Causeway Approach – Suite 213**
**Mandeville, LA 70471**
**Telephone: (985) 626-3812**
**COUNSEL FOR:**
    **Defendant/Appellant - Boise Cascade Company**

**Jason R. Bell**
**Cox, Cox, Filo, Camel & Wilson**
**723 Broad Street**
**Lake Charles, LA 70601**
**Telephone: (337) 436-6611**
**COUNSEL FOR:**
    **Plaintiff/Appellee - Jason Montou**

**THIBODEAUX, Chief Judge.**

This dispute involves a work-related accident for which a claim was filed with the Office of Workers' Compensation after disability benefits were discontinued. Jason Montou was injured in the course and scope of his employment for Boise Cascade Company ("Boise"). Both parties agree Mr. Montou suffered an injury to his shoulder, but disagree over whether he also sustained injuries to his neck and back. The parties also disagree over whether Mr. Montou is still disabled. The workers' compensation judge (WCJ) determined Mr. Montou's neck and back injuries are compensable and that he is still disabled and entitled to indemnity benefits, but that Boise is not liable for penalties and attorney fees for its treatment of his claim. Boise now appeals. After a review of the record, we do not find that the WCJ was manifestly erroneous in his conclusions and, therefore, affirm.

I.

## ISSUES

This Court will now consider:

(1)     whether it was manifest error for the WCJ to conclude that Mr. Montou's alleged back and neck injuries were related to the work accident;

(2)     whether it was manifest error for the WCJ to conclude that Mr. Montou proved by clear and convincing evidence that he is entitled to indemnity benefits as a result of the work accident; and

(3)     whether the WCJ erred in failing to award Mr. Montou penalties and attorney fees.

## II.

## FACTS AND PROCEDURAL HISTORY

Jason Montou, plaintiff-appellee, claims he injured his shoulder, back, and neck on November 22, 2010, while unloading a hydraulic cylinder within the course and scope of his employment with Boise. Following the accident, Mr. Montou immediately reported to his supervisor and completed a Supervisor's Incident Report, which he reviewed and signed. The incident report only refers to a shoulder injury. Mr. Montou was taken to Oakdale Community Hospital by his supervisor and treated for his shoulder injury. The Oakdale records confirm that Mr. Montou's "chief complaint" was right shoulder pain, but they also establish that Mr. Montou complained of numbness in the fingers of his right hand. Mr. Montou was sent home and told to follow-up with an orthopedic doctor if the pain persisted.

Several days later, Mr. Montou contacted the workers' compensation adjuster and requested an appointment with an orthopedic doctor. The adjuster scheduled him an appointment at the Center for Orthopedics where he was treated by Dr. Steven Hale. Dr. Hale treated Mr. Montou for his shoulder, eventually performing surgery on his rotator cuff, and referred Mr. Montou to Dr. William Lowry for treatment of his back. The medical records indicate that throughout his treatment with Drs. Hale and Lowry, Mr. Montou complained of numbness and tingling in his right arm, hand, and fingers, as well as back pain as early as December of 2010 and March of 2011, respectively. Although Dr. Hale opined Mr. Montou could return to work in April of 2011 based on the status of his shoulder, Dr. Lowry disagreed until an MRI of Mr. Montou's lumbar spine could be obtained. The records report a lumbar MRI was obtained, but in September Dr.

Lowry notes that any treatment he could provide was limited until MRIs of the cervical and thoracic spine were approved by workers' compensation. Mr. Montou claimed he stopped treatment with Dr. Lowry because Boise would not approve the MRIs and further treatment would be futile until the MRIs were performed.

In October of 2013, Boise directed Mr. Montou to be examined by Dr. Douglas Bernard, who, after reviewing medical records and performing a physical examination, concluded that Mr. Montou was well past maximum medical improvement (MMI) and could return to work unrestricted. Dr. Bernard opined there was no connection between Mr. Montou's neck and back complaints and the work accident. Though Dr. Bernard found degenerative changes in the back, he stated they were purely degenerative in nature and not caused by the accident. Immediately following receipt of Dr. Bernard's report, Boise terminated Mr. Montou's benefits. Dr. Bernard's report was forwarded to Dr. Lowry for approval, but benefits were terminated before Dr. Lowry's response was received. Dr. Lowry had not seen Mr. Montou in roughly two years and did not make his decision based on his own independent evaluation of Mr. Montou when he approved of Dr. Bernard's findings.

Mr. Montou began seeing Dr. Gunderson, his physician of choice, after his benefits were terminated. Following an examination, Dr. Gunderson opined that Mr. Montou was still disabled due to his neck and back injuries and should not return to work. He further requested that a cervical and lumbar MRI be performed, which Boise refused. Boise also refused to reinstate benefits although Dr. Gunderson believed Mr. Montou to be disabled.

Mr. Montou filed a claim with the Office of Workers' Compensation seeking repayment of medical expenses and the reinstatement of indemnity

benefits from Boise. Mr. Montou also sought penalties and attorney fees for Boise's alleged arbitrary and capricious handling of his claim. Because both Dr. Bernard and Dr. Gunderson's opinions conflicted, the WCJ appointed an Independent Medical Examiner (IME), Dr. Frazer Gaar, to examine Mr. Montou. After a physical examination and review of his medical records, the IME opined that Mr. Montou had "preexisting lumbosacral degenerative disc disease." The IME determined Mr. Montou was at MMI and could return to light-duty work. He specified the "light-duty" status was due to the degenerative disc condition in Mr. Montou's back, not because of injuries remaining from the work accident.

Believing Mr. Montou to be a credible witness, who had seen a plethora of doctors following the work accident, and giving significant weight to the opinion of Dr. Gunderson, the WCJ decided Mr. Montou was still disabled and in need of benefits. The WCJ ordered Boise to accept Mr. Montou's neck and back injuries as compensable injuries stemming from the accident, to approve the cervical and lumbar MRIs requested by Dr. Gunderson, and to reimburse Mr. Montou for Dr. Gunderson's treatment. The WCJ also ordered Boise to reinstate Mr. Montou's indemnity benefits retroactive to October 23, 2013 at a rate of $505.38 per week. However, because Boise terminated benefits only after a credible doctor found Mr. Montou capable of work, and because its actions did not quite amount to being arbitrary and capricious, the WCJ did not award penalties and attorney fees to Mr. Montou. Boise now appeals. In his answer to the appeal, Mr. Montou requests that we award him penalties and attorney fees.

4

III.

## STANDARD OF REVIEW

"Factual findings in workers' compensation cases are subject to the manifest error/clearly wrong standard of review." *Banks v. Indus. Roofing & Sheet Metal Works, Inc.*, 96-2840, p. 7 (La. 7/1/97), 696 So.2d 551, 556. In applying this standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether its conclusion was reasonable. *Id.* Therefore, if the appellate court determines that the trial court's findings "are reasonable in light of the record reviewed in its entirety," it may not reverse, "even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Sistler v. Liberty Mut. Ins. Co.*, 558 So.2d 1106, 1112 (La.1990). "Consequently, when there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous." *Ardoin v. Firestone Polymers, L.L.C.*, 10-245, p. 6 (La. 1/19/11), 56 So.3d 215, 219.

IV.

## LAW AND DISCUSSION

### *Back and Neck Injuries*

When an employee alleges an injury under the Workers' Compensation Act, he carries the burden of proving the accident occurred, and that he suffered a disability as a result of that accident, by a preponderance of the evidence. *Bruno v. Harbert Int'l. Inc.*, 593 So.2d 357 (La.1992). The employee must show that the accident "directly produc[ed] at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." La.R.S. 23:1021(1). *See also Romero v. Chabillis' Tire Serv. Inc.*,

5

97-1722, p. 4 (La.App. 3 Cir. 5/6/98), 714 So.2d 803, 804. However, "[a]n accident exists when heavy lifting or strenuous efforts, although usual and customary, cause or contribute to a physical breakdown or accelerate its occurrence because of a pre-existing condition." *Bourgeois v. Seabright Ins. Co.*, 12-834, p. 5 (La.App. 5 Cir. 4/10/13), 115 So.3d 50, 52-53.

The employee's testimony alone is enough to discharge the burden of proving an accident occurred when: "(1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident." *Bruno*, 593 So.2d at 361. Furthermore, "the trial court should accept as true a witness's uncontradicted testimony although the witness is a party, absent 'circumstances casting suspicion on the reliability of this testimony.'" *Id*. (quoting *West v. Bayou Vista Manor, Inc.*, 371 So.2d 1146, 1147 (La.1979)). Whether the testimony of the worker is credible is a factual determination that should not be disturbed on appeal unless found to be clearly wrong or manifestly erroneous. *Ardoin*, 56 So.3d 215.

The injury-causing event is not contested. Therefore, Mr. Montou must prove a causal relationship between the disability claimed and the accident. *Thibodeaux v. Mech. Constr. Co., L.L.C.*, 10-739 (La.App. 3 Cir. 12/8/10), 52 So.3d 1084. This court recognizes a presumption of disability stemming from a work accident when "an employee proves that before that accident he had not manifested disability symptoms, but that commencing with the accident, the disability symptoms appeared" and the evidence supports "a reasonable possibility of a causal connection between the accident" and the onset of symptoms. *Broadway v. Shane Mitchell Logging, Inc.*, 12-810, pp. 6-7 (La.App. 3 Cir.

12/12/12), 105 So.3d 1041, 1046; *see also Thibodeaux v. Mech. Constr. Co., L.L.C.*, 52 So.3d 1084; *Thibodeaux v. L.S. Womack, Inc.*, 94-1375 (La.App. 3 Cir. 4/5/95), 653 So.2d 123. Furthermore, this court in *Day v. Superior Derrick Services*, 11-749 (La.App. 3 Cir. 12/7/11), 80 So.3d 654, upheld the findings of the WCJ where the claimant's description of the work accident was consistent over many years, the claimant had no symptoms prior to the work accident, and the claimant's testimony was corroborated by circumstances following the accident.

Boise does not dispute Mr. Montou's shoulder injury, but does argue that his back and neck injuries are not compensable injuries stemming from the accident. Mr. Montou began complaining of numbness and tingling in his right hand, arm, and fingers immediately following the accident. The emergency room records from Mr. Montou's visit list numbness and tingling as a complaint, and he continued those complaints throughout his treatment in 2011. In his notes, Dr. Hale recounts that Mr. Montou complained of numbness beginning at his elbow and radiating to his hand, as well as pain in his neck radiating towards his shoulder, both present since the time of the accident. At that time, Dr. Hale recommended that Mr. Montou see Dr. Lowry and possibly have an EMG nerve conduction study to assess the cause of those symptoms. Dr. Hale noted he was concerned that Mr. Montou may have a cervical etiology for his bilateral upper extremity pain. Although Mr. Montou did not state he experienced specific neck pain in the emergency room following the accident, Drs. Hale and Lowry both believed the numbness and tingling to be related to a cervical and thoracic spine injury. Although medical records do not note back complaints until approximately three months after the accident, Mr. Montou did tell Dr. Hale that his back pain had been persistent since the accident. He explained his shoulder was bothering him more

initially, but after shoulder surgery, his back pain became more prominent, even making it difficult to get out of bed.

As in *Day*, no evidence was presented showing symptoms of back or neck pain prior to the work accident. Following the accident, Mr. Montou consistently complained of tingling and numbness in his right upper extremity as well as back pain. Although Boise asserts Drs. Bernard and Gaar believed Mr. Montou to suffer from a genetic degenerative disc disease, the record supports the finding that Mr. Montou was not disabled before the accident and that he had worked for Boise without any known problems. Based on the testimony and records submitted as evidence, the WCJ found Mr. Montou to be an extremely credible witness and believed the circumstances surrounding this case corroborated Mr. Montou's testimony. Finding the factual determinations to be reasonable in light of the record reviewed in its entirety, we cannot say the WCJ was clearly wrong in finding the back and neck injuries to be compensable injuries.

### *Indemnity Benefits*

After concluding that Mr. Montou's neck and back injuries are compensable injuries, the question on appeal becomes whether Mr. Montou continues to suffer a disability and, therefore, should have indemnity benefits reinstated retroactive to the date of discontinuance. In order for an employee to receive temporary or permanent total disability benefits, the employee must prove that he is unable to engage in any form of employment, and must do so by clear and convincing evidence. *Iberia Med. Ctr. v. Ward*, 09-2705 (La. 11/30/10), 53 So.3d 421. "The clear and convincing evidence standard requires a party to prove

the existence of a contested fact is highly probable, or much more probable than its non-existence." *Id.* at 432.

Boise argues the WCJ erred in ordering the reinstatement of Mr. Montou's benefits retrospective to October 23, 2013. Boise supports its argument with the opinions of Drs. Bernard, Lowry, and the IME who believed Mr. Montou could return to some form of employment with Boise. Mr. Montou offers Dr. Gunderson's opinion, as his treating physician, as well as his own testimony to counter these opinions. "Ordinarily, the treating physician should be given more weight than that of a doctor who has examined a plaintiff for purposes of diagnosis only." *Guillory v. Ins. Co. of N. Am.*, 401 So.2d 612, 614 (La.App. 3 Cir. 1981). Although Dr. Gunderson saw Mr. Montou only once, as did Dr. Bernard and the IME, he was the only physician to see Mr. Montou for treatment purposes versus evaluation purposes. Furthermore, although the IME stated the work accident did not cause Mr. Montou's back problems, he did opine that the accident caused an exacerbation of degenerative disc disease. This court has previously held that "[a] claimant's recovery under Louisiana's workers' compensation laws is not barred by a pre-existing condition because an employer takes the employee as he finds him." *Rivers v. Bo Ezernack Hauling Contractor, Inc.*, 09-991, p. 4 (La.App. 3 Cir. 3/10/10), 32 So.3d 1091, 1095, *writ denied*, 10-807 (La. 6/4/10), 38 So.3d 309. Mr. Montou's degenerative disc disease does not prohibit him from receiving benefits when that condition was worsened by an otherwise compensable work related accident. *Id.* *See also*, *Fontenot v. Wal-Mart Stores, Inc.*, 03-1570 (La.App. 3 Cir. 4/7/04), 870 So.2d 540, *writ denied*, 04-1131 (La. 6/25/04), 876 So.2d 843; *Bourgeois*, 115 So.3d 50.

When the WCJ is presented multiple opinions from medical professionals, the "decision to credit one physician's testimony over another's is a credibility determination which, in the absence of manifest error or clear wrongness, cannot be reversed on appeal." *Rochon v. Iberia Parish Sch. Bd.*, 95-1370, p. 7 (La.App. 3 Cir. 3/27/96), 673 So.2d 239, 244 (rehearing granted for other reasons). Based on the foregoing, we find no manifest error in the WCJ giving more weight to Dr. Gunderson's opinion or in the ultimate determination that Mr. Montou is still disabled and entitled to indemnity benefits retroactive to October 23, 2013. Mr. Montou was previously receiving temporary total disability (TTD) benefits and so the judgment of the WCJ presumably reinstated those TTD benefits at a rate of $505.38 per week. We affirm the reinstatement of TTD benefits.

### *Penalties and Attorney Fees*

The Workers' Compensation Act allows penalties and attorney fees to be awarded when an employer fails to approve of medical treatment and when an employer improperly discontinues indemnity benefits. These occasions are governed by two different standards enumerated in La.R.S. 23:1201(E) and La.R.S. 23:1201(I). We will address both occasions separately.

### Failure to Furnish Necessary Treatment

Louisiana Revised Statutes 23:1203(A) obligates employers or their insurer to furnish all necessary medical treatment. Penalties and attorney fees shall be awarded when the employer or insurer fails to provide payment in accordance with section 1201. La.R.S. 23:1201(F). This obligation to furnish treatment includes authorizing medical treatment. *See* La.R.S. 23:1203(E); *Authement v.*

*Shappert Eng'g and St. Paul Fire and Marine Ins. Co.*, 02-1631, p. 8 (La. 2/25/03), 840 So.2d 1181, 1187. Therefore, failure to timely pay benefits or authorize treatment shall result in penalties and attorney fees unless the employer or insurer can reasonably controvert the claim. *Brown v. Texas-LA Cartage, Inc.*, 98-1063 (La. 12/1/98), 721 So.2d 885. To determine whether a claim is reasonably controverted, "a court must ascertain whether the employer or his insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant. . . ." *Id.* at 890.

Mr. Montou asserts that Boise should be responsible for penalties and attorney fees because it failed to authorize and pay for treatment by Dr. Gunderson for Mr. Montou's neck and back. The medical records leading up to this point document complaints of back pain as well as tingling and numbness in his upper right extremities, which Dr. Hale believed could be caused by cervical spine injury. Not only did the emergency room records note Mr. Montou's complaints regarding numbness, but Darla Walker, the adjuster, admitted to having this medical information in her possession. However, Boise also had in its possession, at the time these MRIs were not approved, medical information to reasonably controvert the claim for treatment, specifically, Dr. Bernard's report that Mr. Montou could return to work. In addition, Dr. Lowry agreed with Dr. Bernard's assessment of Mr. Montou's condition, though such agreement was based solely off of Dr. Bernard's report and not an examination of Mr. Montou. Despite this fact, Dr. Bernard's report provided Boise with medical information to reasonably controvert the claim for treatment by Dr. Gunderson. We find no manifest error in the WCJ's denial of penalties and attorney fees under La.R.S. 23:1201(E).

Improper Termination of Benefits

Louisiana Revised Statutes 23:1201(I) provides the standard by which an employer's conduct is evaluated when benefits have been discontinued. This statute provides:

> Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, *when such discontinuance is found to be arbitrary, capricious, or without probable cause*, shall be subject to the payment of a penalty not to exceed eight thousand dollars and a reasonable attorney fee for the prosecution and collection of such claims. The provisions as set forth in R.S. 23:1141 limiting the amount of attorney fees shall not apply to cases where the employer or insurer is found liable for attorney fees under this Section. The provisions as set forth in R.S. 22:1892(C) shall be applicable to claims arising under this Chapter.

La.R.S. 23:1201(I) (emphasis added). The Louisiana Supreme Court in *Brown*, 721 So.2d at 890, explained that "[a]rbitrary and capricious behavior consists of willful and unreasoning action, without consideration and regard for facts and circumstances presented, or of seemingly unfounded motivation." Therefore, the WCJ must consider "whether the employer has [an] articulable and objective reason for denying or discontinuing benefits at the time it took that action." *Authement v. Wal-Mart*, 02-2434, p. 12 (La.App. 1 Cir. 9/26/03), 857 So.2d 564, 574.

After reviewing the record, the WCJ determined that Boise had an articulable and objective reason for discontinuing Mr. Montou's benefits. Boise terminated benefits after receiving Dr. Bernard's report, which stated Mr. Montou was well beyond MMI and could return to work unrestricted. Dr. Bernard was the only doctor to see Mr. Montou in roughly two years prior to Boise discontinuing benefits. Dr. Bernard opined that Mr. Montou had no ongoing problem with his

12

right shoulder. Dr. Bernard also opined that because of the delay in complaining of a neck injury,[1] and after considering the negative EMG and Nerve Conduction Studies of his right upper extremity, he does not believe the neck can be related to the work accident. Finally, Dr. Bernard reviewed MRIs of Mr. Montou's back that showed a low back strain and degenerative disk disease, which he explained are genetic. Dr. Bernard reported he did not see any nerve root compromise and believed no further treatment was necessary. In an addendum, Dr. Bernard stated that if Mr. Montou had suffered any injury to his back at the time of the work accident, "it was nothing more than a minor strain." Based on Dr. Bernard's report, Boise terminated Mr. Montou's benefits.

When determining whether an employer improperly discontinued benefits, the court evaluates facts known to the employer at the time the benefits were terminated. *Johnson v. St. Frances Nursing & Rehab. Ctr.*, 14-599 (La.App. 3 Cir. 12/23/14), 155 So.3d 689. Although the WCJ notes that he believes Dr. Bernard was ultimately wrong in finding Mr. Montou to not be disabled, he determined Boise relied on "competent medical advice" when it chose to terminate benefits. The judge commented that Boise "did appear to be overeager to terminate benefits, but that attitude and behavior did not rise to the level of being arbitrary and capricious." Rather, "there [was] little question that the defense brought a close legal case to the court." On the date of discontinuance, Boise had medical records dated nearly two years prior and Dr. Bernard's report summarizing his evaluation of Mr. Montou. Ultimately the WCJ reasoned that "it cannot be said

---

[1]Dr. Bernard notes that Mr. Montou did not complain of his neck specifically until five months post-accident. However, the record shows Mr. Montou did continuously complain of tingling and numbness in his upper right extremities immediately following the accident.

that the insurer's actions were without consideration and regard for the facts and circumstances presented at trial."

Thus, considering that penal statutes are to be strictly construed and giving deference to the factual findings of the WCJ, we will not disturb the judge's findings that Boise relied on competent medical advice and, thus, had probable cause to terminate Mr. Montou's benefits. *See Rochon*, 673 So.2d 239 (reliance on doctor's opinion was not arbitrary and capricious); *Johnson*, 155 So.3d 689 (reliance on facts and doctor's opinion at time of termination of benefits was not arbitrary and capricious). The court did not err in denying penalties and attorney fees under La.R.S. 23:1201(I).

## V.

## CONCLUSION

For the foregoing reasons we find that there has been no showing of manifest error on the part of the workers' compensation court. Accordingly, the judgment is affirmed in all respects. Costs of this appeal are assessed to the defendant-appellant.

**AFFIRMED.**